WILLIE MONROE et al., Appellants, v CITY OF NEW YORK, Third-Party Plaintiff-Respondent-Appellant; ARMOR WRECKING CORPORATION, Third-Party Defendant-Respondent.

Second Department, March 19, 1979

**APPEARANCES OF COUNSEL**

*Glaser & Blitz, P. C. (Helen B. Stoller* of counsel), for appellants.

*George S. Pickwick (Joseph D. Ahearn* of counsel), for third-party plaintiff-respondent-appellant.

*Peter Pryor (William F. Larkin* of counsel), for third-party defendant-respondent.

## OPINION OF THE COURT

DAMIANI, J. P.

The plaintiff Willie Monroe (hereafter plaintiff), is a demolition worker who was injured when a fire escape upon which he was working fell from the side of the building to be demolished. The principal issue on this appeal is whether the owner of the building may be held liable for plaintiff's injuries upon the theory of common-law negligence or breach of duty imposed by rule, ordinance or statute.

Prior to the time of the accident, the defendant, the City of New York, had acquired title to premises at 115 Humboldt Street in Brooklyn by condemnation. The real property was improved by a five-story building which had originally been constructed as an apartment house. The building had 12-inch thick brick walls and had two sets of fire escapes, one in the front and one in the rear. In June, 1970 the city entered into a contract with Armor Wrecking Corporation to demolish this building and several others to make way for the erection of a new housing project. Armor's crew arrived at the site on August 24, 1970. At that time the building was vacant.

One of the first tasks undertaken on the following day was the removal of the fire escapes from the exterior of the structure. The steel fire escape on each floor in the rear of the building was about four feet wide and six feet long. Each platform of the escape was supported by a least two brackets which extended about four feet out from the rear of the building. Each bracket was embedded in the brick wall to a depth of about eight inches where it was secured to a bolt inside the wall. The four-foot high railings around the platform were affixed to the wall at their ends without providing the platform any added support. Neither did the ladders furnish any support to the platform.

The testimony established that there are many methods of taking down a fire escape. One method is to pull it down by attaching one end of a cable to the escape and the other end to a truck or payloader. Another method involves prying the platforms from the building by the use of "two-by-fours" and allowing them to fall to the ground. Yet a third method is to use an acetylene torch to cut the fire escapes from the building. This could be accomplished in two ways. The "burner" could lean out the window and cut the support brackets, causing the entire platform, railing and ladder to fall to the ground where it could be cut up for removal. Alternatively,

the "burner" could get out on the escape, cut the railings and ladder free and then cut the platform brackets while leaning out the window.

Armor's foreman at the site simply directed plaintiff to remove the rear fire escape by "burning". Plaintiff, who was an experienced workman, chose the second method of burning which involved cutting the escape into pieces while it was still attached to the building. In order to use this method it was necessary to get out onto the escape. Plaintiff testified that before going out on any fire escape he tested it, using a procedure he was taught for safety purposes when he learned his job as a burner. He would sit on the window sill, holding on with his hands, place one foot outside the window and press down on the fire escape to see if it would bear weight without shaking. If the fire escape moved or shook, he would not go out on it; if it did not, he knew it was solid. He tested the lowest fire escape in this manner and then went out on it to begin cutting. First he cut off the vertical ladder, and then he cut the railing into sections and let them fall to the ground. He re-entered the building and then leaned out of the window and cut up the floor slats of the platform. Finally, he cut the support brackets at the building line. He followed the same procedure with the second platform. Before going up to the third platform, plaintiff had occasion to look up and observe its platform brackets from below. He could not see any rust on the brackets and they looked "all right" to him.

When he came to the third escape, plaintiff tested it to see if it moved. It did not. Since it thus appeared solid, plaintiff went out on the third escape to begin work and soon thereafter the entire platform separated from the building causing plaintiff to fall with it to the ground and sustain the injuries for which he sues.

Armor's foreman inspected the wreckage of the fire escape on the ground immediately after the accident. He found that four inches of the ends of the support brackets which were formerly embedded in the wall were rusted and covered with mortar. However, the remaining lengths of the brackets which were previously exposed to view were neither bent, cut nor rusted. In other words, the previously visible portions of the brackets appeared solid. The foreman then went to the floor on which the third escape had been located and, by leaning out the window, observed that bricks surrounding each bracket entry point had been pulled out of the wall. He

inserted his hand into each of the holes and at a depth of four inches he felt the ends of the bracket and anchor which had remained in place after the remainder of the bracket had separated. When he removed his hand from these holes, it was covered with mortar and rust.

In answer to a hypothetical question based upon the foregoing facts, plaintiff's expert gave his opinion that the fire escape fell because the part of the brackets embedded in the wall had corroded and separated from the anchor which remained in the wall. Plaintiff also read part of the examination before the trial of a demolition inspector employed by the City of New York who had visited the premises and who testified that he had not inspected the fire escapes for structural soundness or safety factors but had merely looked at them.

Plaintiff's complaint against the city sought recovery upon the theory of common-law negligence and negligence in the breach of a number of rules, ordinances and statutes relating to fire escapes and the safety of demolition workers. The city brought a third-party action against Armor seeking recovery on the theories of common-law and contractual indemnity. The trial court refused to instruct the jury on any of the proposed statutory theories and the case went to the jury solely on the issue of the city's liability for common-law negligence.

The jury returned a special verdict finding the defendant city guilty of negligence, finding the plaintiff free from contributory negligence and finding that the fire escape and supports "look[ed] all right" before the accident. Thereafter, the city moved to set aside the verdict. After a hearing, Trial Term granted the motion and dismissed the complaint and the third-party complaint asserted by the city against Armor, upon the ground that the city lacked notice of the dangerous condition which caused the accident and that the nature of the work placed plaintiff within certain exceptions to the common-law requirement that defendant provide him with a safe place to work.

■ ■ In order to recover on the theory of common-law negligence, it was incumbent upon plaintiff to establish that defendant owed him a duty of care, the breach of which caused his injuries. The owner of premises is bound to use reasonable care commensurate with the hazard to be apprehended and to maintain his premises in such a condition that

those who go there at his invitation shall not unnecessarily or unreasonably be exposed to danger (46 NY Jur, Premises Liability, § 48). Where the owner invites workmen onto his premises he owes a duty to provide them with a safe place to work (Gasper v Ford Motor Co., 13 NY2d 104, 110, remittitur amd 13 NY2d 893; Hess v Bernheimer & Schwartz Pilsener Brewing Co., 219 NY 415, 418). The common-law duty to provide a safe place to work is now embodied in subdivision 1 of section 200 of the Labor Law. To be charged with negligence for breach of this duty, an owner must have notice, either actual or constructive, of the dangerous condition which caused the accident (41 NY Jur, Negligence, § 9).

Plaintiff's proof conclusively established that the fire escape fell because the portions of the support brackets embedded in the building wall were weakened by corrosion. It also established that this condition was the sole cause of the collapse because none of the parts of the fire escape which plaintiff had previously removed bore any part of the weight of the section which fell and at that time Armor's demolition operations had not yet extended to the rear brick wall in which the brackets were anchored. Concededly, defendant did not have actual knowledge of the rusted condition of the portion of the brackets which were inside the wall. Plaintiff contends that defendant should be charged with constructive knowledge of that condition.

The duty of an owner to provide a safe place to work encompasses the duty to make reasonable inspections to detect dangerous conditions (Seigel v Prima Concrete Constr. Corp., 27 AD2d 946, 947; Century Ind. Co. v Arnold, 153 F2d 531, 534). At best, the city made only a cursory inspection of this fire escape. However, that fact does not compel a finding of liability because the failure to make a diligent inspection constitutes negligence only if such inspection would have disclosed the defect (Century Ind. Co. v Arnold, supra, at p 534). Thus the owner is only under a duty to furnish a reasonably safe "plant" (Borshowsky v Altman & Co., 280 App Div 599, affd 306 NY 798) and he is not thereby made an insurer against the risk of unforeseeable accidents (Cartee v Saks Fifth Ave., 277 App Div 606, 609-610, affd 303 NY 832). If the place provided by the owner for work is unsafe because of some hidden defect which reasonable inspection would not have disclosed, the owner will not be held liable if injury results therefrom. He is required to exercise reasonable fore-

sight, but not "prophetic vision" *(Cartee v Saks Fifth Ave., supra,* at pp 609-610).

Here the defect which caused the accident was latent. The rusted portions of the support brackets were encased within the brick and mortar of the rear wall of the building and the jury found that the exposed portions of the brackets "look[ed] all right" prior to the accident. The city was only under a duty to make a reasonable inspection. We hold, as a matter of law, that absent any warning of a possible defect in the interior portions of the brackets (such as a sagging of the escape—and the testimony established that there was no such warning), defendant was under no duty to tear apart the exterior wall of the building to inspect the portions of the brackets which were contained therein (see *De Witt Props. v City of New York,* 44 NY2d 417, 424, holding that a municipality is under no duty to tear up its streets to inspect water mains). Accordingly, the defendant may not be charged with notice of the defective condition in this case and so much of the complaint as sought recovery upon specific proof of common-law negligence was properly dismissed.

■ Plaintiff argues that he was entitled to go to the jury on the theory of *res ipsa loquitur.* We disagree. That doctrine applies where the agency causing the injury is under the exclusive custody and control of the one charged with negligence and the surrounding circumstances are such that the accident would probably not have occurred if reasonable diligence had been exercised (41 NY Jur, Negligence, § 87; 2 Harper and James, Law of Torts, § 19.5, p 1077). It is also elementary that where the doctrine is applicable, it only gives rise to an inference of culpability upon the part of the defendant. Apart from the fact that the city was not in exclusive control of the building (Armor was in possession and was in the process of tearing it down), or of the fire escape (plaintiff himself was about to cut it into pieces with an acetylene torch), the doctrine of *res ipsa loquitur* does not apply here because the proof was overwhelming that the actual competent producing cause of the accident was the rusted brackets. A plaintiff who relies upon *res ipsa loquitur* is free to adduce some specific evidence of the cause of the accident without giving up his right to rely upon the doctrine to support other possible explanations for its happening and if the jury disbelieves the specific proof as to the cause, it may still rely upon the doctrine to infer that it was one of the remaining possible

causes which occasioned the accident *(Abbott v Page Airways,* 23 NY2d 502, 513). However where, as here, the plaintiff's specific and overwhelming proof establishes all the facts surrounding the cause of the accident, there is no need for the inference of negligence created by the doctrine of *res ipsa loquitur* and it disappears from the case (see Prosser, Law of Torts [4th ed], § 40, p 232; 2 Harper and James, Law of Torts, § 19.10, p 1099).

The duty to provide a safe place to work is subject to several well-recognized exceptions, which include, *inter alia,* hazards inherent in the work which the contractor was engaged to perform, such as where the prosecution of the work itself creates the danger or where the work involves the repair of a defect in the premises to which the accident is attributable (see 46 NY Jur, Premises Liability, § 51, p 146). Trial Term dismissed plaintiff's complaint in part because of these exceptions to the requirement that an owner provide a safe place to work (citing *Kowalsky v Conreco Co.,* 264 NY 125; *Mullin v Genesee County Elec. Light, Power & Gas Co.,* 202 NY 275; *Zeledon v Bowery Sav. Bank,* 195 Misc 933). We do not agree that these exceptions apply here and were it not for the fact that plaintiff failed to prove notice, we would have reversed and reinstated the verdict on the theory of common-law negligence.

The *Mullin* case *(supra)* stands for the proposition that where the condition which caused the accident is caused by the plaintiff or his fellow workers, the owner may not be charged with a failure to provide a safe place to work. Thus, if a demolition worker is injured when the process of demolition so weakens a structure that it collapses upon him, he may not seek recovery from the owner. Such is not the situation in this case since the testimony established that the fire escape did not fall from the effects of any demolition work on plaintiff's part but because the brackets supporting the platform upon which he was working failed due to corrosion. The *Kowalsky* case *(supra)* stands for the proposition that one called upon to correct a dangerous condition cannot recover for injuries received while doing an act to eliminate the cause of the injury. This exception rests upon the theory that the workman assumes the risks inherent in correcting or removing the condition. In this case Armor and its employees were not called upon to demolish the building because it was in a dangerous or defective condition, but because it had to be

removed to make way for a new housing project. In fact, the issue of whether this was an "emergency demolition" was removed from the jury's consideration without objection. In any event, the testimony established that the fire escape appeared sound and solid. Hence, plaintiff did not assume the risk that it would fall for the reason that it did. To the extent that the holding in the *Zeledon* case *(supra)* may be considered contrary to the foregoing, we disapprove thereof.

■ Plaintiff next contends that the question of the defendant's liability under certain provisions of the Administrative Code of the City of New York was erroneously excluded from consideration by the jury. It is a well-settled rule in this State that where an ordinance for the protection or benefit of individuals prohibits the doing of acts or imposes a specific duty, the violation of the duty imposed thereby is some evidence of negligence to be considered by the jury in an action brought by a person for whose benefit the ordinance was enacted to recover for injuries of the character it was designed to prevent, if proximately produced by such violation *(Carlock v Westchester Light. Co.,* 268 NY 345, 349).

■ The trial court properly excluded former section C26-298.0 of the Administrative Code of the City of New York (L 1937, ch 929) from consideration by the jury. That section required, *inter alia,* that where used as a means of egress, fire escapes be constructed of incombustible materials and be of sufficient strength to sustain safely a superimposed load of one hundred pounds per square foot. The removal of the two lower fire escapes rendered the fire escape from which plaintiff fell unusable as a means of egress. In any event, the cited section is inapplicable because it was repealed in 1968, some one and one-half years prior to the accident (Local Laws, 1968, No. 76 of City of New York, § 1, p 349; § 50, p 1366).

■ Similarly subdivision b of section D26-12.03 of the Administrative Code of the City of New York, upon which plaintiff relies, is inapplicable. That enactment provides, *inter alia,* that whenever a fire escape becomes corroded, the owner shall scrape and remove the corrosion products and repaint it with two coats of paint of contrasting colors. The record clearly indicates that the escape fell because of the corroded condition of the portions of the brackets encased in the brick and mortar of the building wall. Meticulous compliance with this ordinance would have led only to the scraping and painting of the exterior portions of the fire escape and would

not have led to the discovery or prevention of the condition which caused the brackets to fail. It can then be said, as a matter of law, that the alleged breach of the ordinance was not the proximate cause of the accident.

Plaintiff's final contention is that subdivision 6 of section 241 of the Labor Law and subdivision (c) of rule 23-3.3 of the State Industrial Code (12 NYCRR 23-3.3 [c]) enacted pursuant thereto, are applicable to the facts of this case. We turn first to a consideration of applicability of the administrative rule. It provides: "(c) *Inspection.* During hand demolition operations, continuing inspections shall be made by designated persons as the work progresses to detect any hazards to any person resulting from weakened or deteriorated floors or walls or from loosened material. Persons shall not be suffered or permitted to work where such hazards exist until protection has been provided by shoring, bracing or other effective means."

■ The thrust of this subdivision is to fashion a safeguard, in the form of "continuing inspections", against hazards which are created by the progress of the demolition work itself. It does not address itself to the situation where, as here, the danger was present before the demolition work began. At no time has plaintiff claimed that work performed either by him or by other Armor employees weakened the third-level fire escape or the brackets which supported it. Moreover, plaintiff testified and the jury specifically found, that the fire escape and its brackets "look[ed] all right" just before the accident. As stated above, with respect to the discussion of defendant's common-law duty to furnish a safe place to work, no reasonable inspection would have revealed the latent defect which caused this accident. Assuming, but not deciding, that plaintiff proved a failure to inspect as required by the rule, such failure could not have contributed to the happening of the accident.

In order to understand and evaluate the merits of plaintiff's claim under subdivision 6 of section 241 of the Labor Law itself, it is necessary to briefly examine the legislative history of that enactment. Prior to 1962, section 241 contained, *inter alia,* five substantive subdivisions which required all contractors and owners to provide certain specific safeguards and protection deemed appropriate by the Legislature in connection with certain construction operations (L 1909, ch 36, § 20, as amd by L 1911, ch 693; L 1913, ch 492; L 1919, ch 545, § 2).

A breach of the duties imposed by these subdivisions exposed the owner and contractor to absolute liability irrespective of fault and despite lack of control (see *Allen v Cloutier Constr. Corp.,* 44 NY2d 290, 297-298).

In 1962 the Legislature amended section 241 (L 1962, ch 450, § 3) by repealing the former provisions and substituting therefor one paragraph which imposed a duty upon owners, general contractors and subcontractors to so construct, shore, equip, guard, arrange, operate and conduct their operations so as to provide "reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places." In the case of *Corbett v Brown* (32 AD2d 27), it was held that the absence of specific directions normally found in statutes imposing strict liability indicated that the broad general language of the 1962 amendment should be construed to be merely declaratory of the common law to the extent that it imposed a duty of reasonable care and that accordingly the revised statutory language did not result in absolute liability (see, also, *Shaffer v Westchester Crane Serv.,* 37 AD2d 984; see Restatement, Torts 2d, ch 15, § 409 *et seq.,* for a general discussion of the liability of employers of independent contractors).

As stated above, under the common law an owner's duty to provide a safe place to work merely requires that he provide a reasonably safe plant and the duty is not breached when the injury arises out of a defect in the subcontractor's own plant, tools, equipment, methods, or through negligent acts of the subcontractor occurring as a detail of the work (see *Borshowsky v Altman & Co.,* 280 App Div 599, *supra; Persichilli v Triborough Bridge & Tunnel Auth.,* 16 NY2d 136, 145). Because the 1962 amendment had been construed as being merely declarative of the common law, it therefore followed that an owner or general contractor could not be held responsible for the negligent acts of others over whom he had no control *(Curtis v State of New York,* 23 NY2d 976).

In 1969 the Legislature again amended section 241 of the Labor Law (L 1969, ch 1108, § 3) for the purpose of placing the ultimate responsibility for safety at construction demolition and excavation sites upon the owner and general contractor (see *Allen v Cloutier Constr. Corp.,* 44 NY2d 290, 300, *supra).* To accomplish this purpose the 1969 amendment (1) restored the pre-1962 preamble to the section which specifically directed that all owners, contractors and their agents comply

with its requirements, (2) restored the first five sections of the pre-1962 statute which had imposed absolute liability for their breach, (3) renumbered as subdivision 6 the substance of the post-1962 provision which had been interpreted as restating the common-law requirement of reasonable care, and (4) authorized the Board of Standards and Appeals, in subdivisions 7 and 8, to make rules for the protection of workmen in, and persons passing by, construction, demolition and excavation sites.

In the case of *Allen v Cloutier Constr. Corp.* (44 NY2d 290, 300, *supra)* the Court of Appeals held that subdivisions 1 through 6 of section 241 of the Labor Law, as amended in 1969, impose a "nondelegable duty" on owners and contractors irrespective of their control or supervision of the site. By reason of that holding it is clear that in this case the trial court erred in ruling that section 241 of the Labor Law was inapplicable, because, as the owner, the defendant city was under the duty imposed by subdivision 6 of that section despite the fact that it lacked control or supervision of the demolition work. For the purpose of deciding whether to order a new trial or to direct entry of judgment for the plaintiff on this statutory cause of action, it becomes necessary to determine the exact nature and scope of the duty which the city owed the plaintiff. In the *Allen* case the Court of Appeals went on to describe the duty imposed by subdivisions 1 through 6 of section 241 of the Labor Law as fashioning "absolute liability" upon an owner for the breach thereof. For the reasons stated *infra,* we consider this statement to be obiter dictum and not controlling in this case.

The issues in *Allen (supra)* and in its companion case of *Myers v Cornell Univ.* (44 NY2d 290) arose in the following procedural context: in both cases the defendants moved to dismiss the complaint *solely* upon the ground that they lacked supervision and control of the construction sites where the accidents occurred. In *Allen (supra)* the Court of Appeals affirmed an order of the Appellate Division, Third Department, which in turn had affirmed an order of Special Term denying the motion to dismiss the complaint. In *Myers (supra)* the Court of Appeals affirmed an order of the Appellate Division, Third Department, which (1) reversed an order of Special Term granting dismissal of the complaint, and (2) reinstated the complaint. Thus, the only question before the Court of Appeals in those two cases was whether the defen-

dants therein owed the injured workers a duty despite the fact of their lack of supervision and control of the work site. The exact scope and nature of the duty itself was not at issue and the Court of Appeals comment (p 300) that subdivision 6 imposed "absolute liability" was unnecessary to the determination of the precise issue then before the court (see *Roberson v Rochester Folding Box Co.*, 171 NY 538; *Colonial City Traction Co. v Kingston City R. R. Co.*, 154 NY 493; 1 Carmody-Wait 2d, NY Prac, § 2:54).

We now turn to the substantive issue of the nature of the duty owed by the defendant to the plaintiff. Insofar as the 1969 amendment restored subdivisions 1 through 5 to section 241 of the Labor Law, there can be no question that these subdivisions impose absolute liability for their breach. They have always been so construed (see *Joyce v Rumsey Realty Corp.*, 17 NY2d 118, 122). Compliance or noncompliance with a statutory mandate imposing absolute liability is a question of law for the court *(Joyce v Rumsey Realty Corp., supra*, at p 122). The provisions of the present subdivision 6 of section 241 of the Labor Law are entirely different from those of the first five subdivisions which, under specific factual circumstances, impose a duty to perform definite acts to protect the safety of workers. Subdivision 6, however, contains no such explicit and definite commands which can be determined to have been performed or not performed by the court as a matter of law. Rather, it requires that all areas in which construction, excavation or demolition work is being performed be so "constructed, shored, equipped, guarded, arranged, operated and conducted as to provide *reasonable and adequate* protection and safety to the persons employed therein or lawfully frequenting such places" (emphasis supplied).

The problem encountered in applying the Court of Appeals statement that subdivision 6 of section 241 of the Labor Law imposes a "nondelegable duty", the breach of which results in "absolute liability", arises from several sources. *First* and foremost, the subdivision imposes a duty of reasonable care, whereas questions of absolute liability are determined without reference to such a standard (see Restatement, Torts 2d, §§ 519, 520, subd [c]; *Corbett v Brown*, 32 AD2d 27, *supra).*

*Second,* the fact that the Legislature intended the duty imposed by subdivision 6 of section 241 of the Labor Law to be nondelegable, does not lead inevitably to the conclusion that that duty results in absolute liability. There is more than one

type of nondelegable duty. In this regard it is interesting to note that when speaking of "nondelegable duty", leading authorities use the term to denote a rule resulting in the imposition of *vicarious liability* upon an owner for the negligence of his general contractor or of subcontractors (see Prosser, Law of Torts [4th ed], § 71, p 470; 2 Harper and James, Law of Torts, § 26.11, pp 1406-1408). In such cases it is for the jury to determine whether the negligent breach of duty by the general contractor or subcontractor caused the plaintiff's injury and, if that duty was nondelegable, then the law will require the owner to vicariously respond in damages without regard to his own fault. In the case of absolute liability, however, the defendant owner must respond in damages whenever injury occurs during the course of a specific hazardous activity if special precautions mandated by the statute have not been taken. If the required special precautions were not observed, the person charged with the duty will be held absolutely liable without regard to whether the failure to do so was caused by the fault or negligence of any person (see Prosser, Law of Torts [4th ed], § 71, pp 472-474; 2 Harper and James, Law of Torts, § 14.1, p 787). As noted above, it is for the court and not the jury to decide whether a defendant is absolutely liable *(Joyce v Rumsey Realty Corp.,* 17 NY2d 118, 122, *supra;* Restatement, Torts 2d, § 520, Comment *l).*

The duty involved in cases of "vicarious liability" is one of reasonable care, and in cases of "absolute liability" it is the obligation to undertake the required special precautions. Thus there is a demonstrable difference in the nature of the duty imposed under the respective theories. However, the parties required to respond for a breach of these duties, e.g., owners, general contractors and subcontractors, are usually the same. In both instances the law evinces an intent to require certain parties to bear the responsibility of responding to those injured by reason of the breach of the respective duties, and it prohibits them from avoiding liability by the device of turning over the responsibility of performing the duty to another. Hence it is sometimes said that the obligation to undertake the special precautions required in cases of "absolute liability" may not be delegated to others—that is, it too, is often called "nondelegable" (see *Besner v Central Trust Co. of N. Y.,* 230 NY 357, 363). This, however, refers to the party who is charged with the duty and not to the nature of the duty itself.

The 1969 amendment merely shifted the substantive word-

ing of the 1962 statute into the new subdivision 6 of section 241 of the Labor Law. The change it made was to specifically require in the preamble of the amended section, that owners, contractors and their agents comply therewith. Thus the change was in the "who" and not the "what" of the statute, and its apparent intent was to compel owners and general contractors to become more concerned with the safety practices of subcontractors, because they would be exposed to liability without regard to control over the work (see *Allen v Cloutier Constr. Co.,* 44 NY2d 290, 301, *supra)*. This intent is in no way frustrated by holding that the subdivision exposes them to "vicarious liability" for their subcontractor's negligence rather than "absolute liability".

*Third,* the terms of subdivision 6 are almost identical to those of subdivision 1 of section 200 of the Labor Law. Subdivision 1 of section 200 provides that all places to which the Labor Law applies shall be so "constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places." This language has been held to be declarative of the common-law obligation to provide a safe place to work in that it imposes a duty of reasonable care (see *Dittiger v Isal Realty Corp.,* 264 App Div 279, revd on other grounds 290 NY 492). It would be illogical and unreasoanble to construe subdivision 6 of section 241 of the Labor Law, which requires that "reasonable and adequate protection and safety" be provided to construction, demolition and excavation workers, to impose an absolute liability, while at the same time construing the almost identical language of section 200 of the Labor Law as merely requiring the exercise of reasonable care.

*Fourth,* the Legislature had the power to delete the requirement that only reasonable and adequate protection be afforded under subdivision 6 of section 241 of the Labor Law and to reword the statute so as to require complete protection for any injury arising out of the course of the work. The fact that the Legislature knew how to accomplish this result is manifest from the wording it selected for subdivision 1 of section 240 of the Labor Law which requires that ladders, scaffolds and hoists, etc., "be so constructed, placed and operated so as to *give proper protection"* to a person employed in their use (emphasis supplied). That section has been construed as imposing "absolute liability" because it does not require the exercise

of reasonable care but, instead, imposes a flat and unvarying mandate that workers be protected from all injury arising from the use of such devices *(Koenig v Patrick Constr. Corp.,* 298 NY 313, 318). On the other hand the language of subdivision 6 of section 241 of the Labor Law, requiring reasonable and adequate protection, has been construed as requiring only a duty to provide reasonable care to prevent injury *(Corbett v Brown,* 32 AD2d 27, *supra;* cf. *Shaffer v Westchester Crane Serv.,* 37 AD2d 984, *supra).*

*Fifth,* absolute liability is most often applied only in connection with abnormally dangerous things and activities (Prosser, Law of Torts [4th ed], § 78; 2 Harper and James, Law of Torts, § 14.1; Restatement, Torts 2d, §§ 427A, 520). This policy has long been reflected in the statutory scheme, whereby owners and contractors involved in the broad variety of tasks encompassed in construction, demolition, and excavation work have been held liable only for negligence (Labor Law, former § 241, subd 7 [L 1932, ch 470, as amd by L 1934, ch 144; L 1938, ch 657, § 6; L 1947, ch 683, § 7]; Labor Law, former § 241 [L 1962, ch 450, § 3]). However, workers at specific abnormally hazardous tasks within these trades have enjoyed the protection of absolute liability, e.g., users of ladders, scaffolds and hoists, etc. (Labor Law, § 240), workers on structural steel (Labor Law, § 241, subd 4) and workers in or at elevator shaftways, hatchways and stairwells (Labor Law, § 241-a). A holding that the present subdivision 6 of section 241 of the Labor Law imposes absolute liability would ignore the fact that a substantial part of the work involved in the construction, demolition and excavation industries is not abnormally dangerous and that whatever dangers are normally involved in such work can be avoided by the exercise of reasonable care.

*Sixth* and finally, we have examined the contents of the bill jacket concerning the 1969 amendment of section 241 of the Labor Law (L 1969, ch 1108, § 3), presently on file with the Legislative Reference Section of the New York State Library. The documents contained therein indicate that the major proponent of the legislation was the New York State AFL-CIO, which sought restoration of the pre-1962 provisions of the law upon the ground that such restoration would require greater safety precautions at construction, demolition and excavation sites. With apparent reference to the fact that under the proposed amendment, the post-1962 provisions of section 241 of the Labor Law would be retained as subdivision

6 thereof, the memorandum submitted by the AFL-CIO stated that the amendment "makes no change whatever in the present requirements on employers, builders and contractors." One of the major unexpressed motivations of the AFL-CIO seems to have been to avoid the limitations imposed by the Workmen's Compensation Law on damges recoverable by a worker injured in a job-related accident. Under the post-1962 version of section 241, an employer, contractor or subcontractor could only be held liable in a negligence action if he had control over the work. In most cases, however, the only party having control over the injured employee's work was his employer, against whom suit was forbidden by section 11 of the Workmen's Compensation Law. By making the duties imposed by the various subdivisions of the statute nondelegable, the 1969 amendment opened the door to suits by injured workmen against owners and contractors despite their lack of control over the work in which the employee's injury was sustained. Several organizations of insurers recognized the implications of the 1969 amendment and opposed it upon the ground that it would frustrate the Workmen's Compensation Law and, by exposing owners and contractors who had no control over the work to liability, would add a very substantial insurance expense to construction costs. The only specific reference in the legislative documents to the post-1962 provisions of section 241 of the Labor Law was contained in the report of the Division of the Budget, which stated: *"The bill retains the present provisions of Section 241* which require all possible safety precautions on every construction or demolition project" (emphasis supplied).

It thus appears from the legislative file that the major focus of the attention of the proponents and opponents of the bill was on "who" would owe the duties imposed thereby. There was no expressed intent to change the nature of the duty imposed by the 1962 language of the statute as transferred to subdivision 6 of section 241 of the amended version.

█ We therefore construe subdivision 6 of section 241 of the Labor Law to impose a nondelegable duty upon owners and contractors to vicariously respond in damages for injuries sustained due to the negligence of general contractors or subcontractors in failing to conduct their construction, demolition or excavation operations so as to provide for the reasonable and adequate protection of the persons employed therein.

Such a construction has the salutary effect of preserving the issue of the breach of the statute for resolution by a jury.

In this case the plaintiff has failed to prove any negligence on the part of the city in the exercise of its duty to provide a safe place to work. In light of this fact we remit the case for a new trial to determine solely whether the city should be held vicariously liable for any breach by Armor Wrecking Corporation of the duty imposed by subdivision 6 of section 241 of the Labor Law. Here the plaintiff's fall was caused by a latent defect which went undiscovered through no fault of the defendant city. It may be that plaintiff would not have fallen if he had been "equipped" by Armor with a safety belt, or if Armor had "operated" by requiring its burners to use a more strenuous test of the safety of the fire escape platforms, or if Armor had "conducted" the demolition by using a different method of removing the fire escapes. It will be for the jury to determine whether the equipment, operation and conduct of the work, etc., were reasonable and adequate under the circumstances.

In reaching this result, we are aware of the Court of Appeals holding in the recent case of *Haimes v New York Tel. Co.* (46 NY2d 132), but find that case distinguishable. Although the scope of liability as well as the question of who was liable was involved in the determination of that appeal, the case arose under section 240 of the Labor Law which has always been construed as imposing absolute liability (see *Koenig v Patrick Constr. Corp.*, 298 NY 313, *supra*).

Accordingly, the judgment appealed from should be reversed and the matter remitted for a trial of plaintiff's Labor Law cause of action as aforesaid and of the city's third-party action against Armor Wrecking Corporation on the theories of common-law and contractual indemnity.

SUOZZI, SHAPIRO and COHALAN, JJ., concur.

Judgment of the Supreme Court, Kings County, entered April 18, 1977, reversed, on the law, without costs or disbursements, and new trial granted in accordance with the opinion herein.