BRUCE GREENBERG, Plaintiff, v CITY OF NEW YORK et al., Defendants, and NAJJAR INDUSTRIES, INC., et al., Defendants and Third-Party Plaintiffs-Respondents. TRAYNOR & HANSEN CORP., Third-Party Defendant-Appellant.

Second Department, June 29, 1981

### APPEARANCES OF COUNSEL

*McLaughlin, Simone & Lawlor (James M. McLaughlin, Jr. and Thomas E. Paterson* of counsel), for appellant.

*Fetell & Coen, P. C. (Lester E. Fetell* of counsel), for defendants and third-party plaintiffs-respondents.

### OPINION OF THE COURT

O'CONNOR, J.

The sole issue on this appeal (pursuant to the parties' stipulation) is whether a subcontractor must indem-

nify its general contractor, pursuant to the terms of a contract of indemnity, for injuries to the subcontractor's employee. The general contractor contends that such indemnification is required, since the injury arose out of the employee's performance of the said contract. We agree, and hold that the liability imposed on the general contractor is within the indemnitor's obligation under the contract.

The City of New York, Environmental Protection Administration, engaged the services of several prime contractors, including Najjar Industries, Inc. and Coppolla Bros. Excavation Corp., doing business as a joint venture (Najjar), to do work at the Greenpoint incinerator. Najjar employed Traynor & Hansen Corp. (Traynor) as a subcontractor on the project, pursuant to a written contract. Plaintiff, an employee of Traynor, was injured during the performance of the contract, falling through a slanted roof made of transite. Subsequently, plaintiff commenced this action against, *inter alia*, the City of New York and Najjar, grounded in common-law negligence and a violation of section 240 of the Labor Law. Najjar impleaded Traynor as a third-party defendant. At the conclusion of a jury trial, the trial court directed a verdict in favor of the plaintiff against the City of New York, the owner of the premises, for insufficient scaffolding, in violation of subdivision 1 of section 240 of the Labor Law. However, the court ruled that Najjar was not a general contractor within the meaning of that statute, and was not directly liable to the plaintiff. Thereafter, the parties stipulated that all remaining issues, involving third-party actions and cross claims, would be decided by the trial court.

Trial Term held that since Traynor was the sole party at fault, Najjar must indemnify the City of New York pursuant to their indemnity agreement, whereby Najjar assumed all of the city's liability resulting from the negligence of Najjar or its subcontractor(s), or for their failure to comply with any provision of law. Furthermore, the court held that Traynor must indemnify Najjar based on their indemnity agreement, which provides in pertinent part:

"The Contractor [Najjar] shall not be responsible for injury to any person, whether employed by the Sub-Contractor [Traynor] or otherwise, or to the public * * * arising from the acts of the Sub-Contractor or its employees, or those furnishing labor, materials and/or equipment for the performance of the Sub-Contractor's obligation hereunder, against all which injuries and damages to persons and property the Sub-Contractor must properly guard, and it must make good all such damage and injury from whatever cause occasioned * * * and in the event of suit being brought against the Contractor or Owner for any claim growing out of any of the above causes, the Sub-Contractor shall pay all expenses of such litigation as soon and as often as incurred, and in the event of a judgment being entered against the Contractor and/or Owner in any such action, or the settlement of such claim, the Sub-Contractor shall and hereby agrees to immediately after the entry of such judgment or the making of such settlement, to pay to the Contractor the amount of such judgment or settlement; failure to pay any such expenses, judgment or settlement in the manner above stated, shall be construed as a breach of this sub-contract * * *

"The liability of the Sub-Contractor under this paragraph is absolute and is not dependent upon any question of negligence on its part or on the part of its agents, servants or employees, and the neglect of the Contractor or Superintendent and/or Owner to direct the Sub-Contractor to take any particular precautions or to refrain from doing any particular thing, shall not excuse the Sub-Contractor in case of any such damages or injuries to person or property."

Traynor contends that the contractual indemnity provision is inapplicable since Najjar's liability arose only due to the indemnity agreement between Najjar and the city, and not as a result of Najjar's direct liability. Traynor, citing *Dullard v Berkeley Assoc. Co.* (606 F2d 890), further asserts that its typical "hold harmless" agreement with Najjar should not include Najjar's liability to a third party. While this argument has a certain surface appeal, the reality of the situation is that Najjar is only seeking indemnification for liability ultimately occasioned by Tray-

nor's fault, although actually imposed because of Najjar's agreement with the City of New York. In *Dullard v Berkeley Assoc. Co. (supra)* a subcontractor's employee was injured, and the jury assessed the proportionate liability for a violation of subdivision 6 of section 241 of the Labor Law between the owner, the general contractor and the subcontractor. The Second Circuit held that the subcontractor must indemnify its general contractor, according to their agreement, for the latter's actual fault. However, the subcontractor was not liable for the owner's proportional fault, which was assumed by the general contractor in its agreement with the owner. Similarly, in *Vey v Port Auth. of N. Y. & N. J.* (79 AD2d 920) the court refused to require the subcontractor to indemnify its general contractor for the owner's negligence, holding that the subcontractor's indemnity agreement did not incorporate the agreement between the general contractor and owner. Certainly, if Traynor was asked to indemnify its general contractor, for the property owner's actual fault, the rule in *Dullard* and *Vey (supra)* would apply, and the typical hold harmless agreement would not have the unusual legal effect of including Najjar's contractual liability to indemnify the City of New York. It is important to note that in the present case the actual fault for plaintiff's injuries rests entirely upon Traynor. While Traynor does not assume all of Najjar's liability as a result of Najjar's absolute indemnity agreement with the city, the subcontractor is ultimately liable for its own performance of the work covered by its agreement with Najjar (see *General Elec. Co. v Hatzel & Buehler*, 19 AD2d 40, affd 14 NY2d 639). The provision of the subcontract between Najjar and Traynor simply carved out of the general contractor's potential liability a smaller portion which was assumed by the subcontractor *(General Elec. Co. v Hatzel & Buehler, supra)*.

The major reason for the result in *Dullard v Berkeley Assoc. Co.* (606 F2d 890, *supra)* and *Vey v Port Auth. of N. Y. & N. J. (supra)* is that the general contractor would truly not be liable to the owner, but for their indemnity agreement, and there would be no liability to pass on to the subcontractor. In the present case, however, the City of New York could have successfully recovered against Tray-

nor, based on common-law indemnity principles, if it had asserted such a third-party claim (see *Kelly v Diesel Constr. Div. of Carl A. Morse, Inc.*, 35 NY2d 1). The city did not pursue such a claim directly against Traynor, since it had the ease of resorting to its contract with Najjar. Moreover, the City of New York could have asserted a third-party claim against Traynor, on a theory of contractual indemnity, as a third-party beneficiary of the Najjar-Traynor agreement (see *McKeon v Port of N.Y. Auth.*, 43 AD2d 513). Surely, the fortuitous method of placing the responsibility on Najjar, should not absolve Traynor. Ironically, according to Traynor's reasoning, it would be liable under the contract if Najjar was the party actually at fault (see *Levine v Shell Oil Co.*, 28 NY2d 205), but yet blameless under these circumstances for its own fault—a rather bizarre conclusion, indeed!

■ Furthermore, we disagree with the trial court's finding that Najjar was not a general contractor within the meaning of section 240 of the Labor Law (see *Rocha v State of New York*, 45 AD2d 633, mot for lv to app den 36 NY2d 642). The 1969 amendment to subdivision 1 of section 240 of the Labor Law (L 1969, ch 1108, § 1) imposes absolute liability on the owner and general contractor (see *Lagzdins v United Welfare Fund-Security Div. Marriott Corp.*, 77 AD2d 585, 588; *Monroe v City of New York*, 67 AD2d 89, 105-106). The purpose of the amendment was to place the primary responsibility for safety practices on the owner and general contractor, where it belongs (see NY Legis Ann, 1969, pp 407-408; *Rocha v State of New York, supra*) because such parties are more likely to be solvent than subcontractors, who often occupy an inferior economic position (see *Haimes v New York Tel. Co.*, 46 NY2d 132). We believe that the expressed legislative policy, and a liberal construction of section 240, warrant a finding that Najjar was a general contractor within the meaning of section 240, with respect to Traynor, and the work performed by Traynor's employees. This conclusion is unavoidable, notwithstanding the fact that there were other general contractors working on other parts of the project. Consequently, Najjar is also primarily liable to the plaintiff for a violation of section 240.

■ However, even though the owner and general contractor are primarily liable for failure to comply with the statute, they may protect themselves financially and otherwise by agreements with those they hire (see *Rocha v State of New York, supra; Struble v John Arborio, Inc.*, 74 AD2d 55). It is commonplace for a general contractor to obtain a covenant of indemnification from its subcontractors, which the courts have always accepted as enforceable. In most cases, where liability insurance covers the project, the distribution of the costs of plaintiff's accident would be between the insurance carriers for the parties (see *Kelly v Diesel Constr. Div. of Carl A. Morse, Inc.*, 35 NY2d 1, 6, *supra*). While the duty imposed by section 240 of the Labor Law may not be delegated, the burden may be shifted to the party actually responsible for the accident (see *Allen v Cloutier Constr. Corp.*, 44 NY2d 290). Consequently, Najjar may shift this burden to Traynor, which the parties' agreement attempted to do. In our view, the contract is clear and unambiguous, and by its terms mandates Traynor's indemnification of its general contractor. Moreover, this result was within the purposes which the agreement was designed to accomplish, and was unmistakably within the intent of the parties at the time of contracting (see 28 NY Jur, Indemnity, § 5). To hold otherwise, would leave this concededly broad indemnity agreement without force and effect (see *Corhill Corp. v S. D. Plants, Inc.*, 9 NY2d 595, 599). We also note that although the parties' stipulation limited the issue on appeal to one of contractual indemnity, Najjar would otherwise be entitled to obtain common-law indemnification from Traynor (see *Kelly v Diesel Constr. Div. of Carl A. Morse, Inc., supra; Allen v Cloutier Constr. Corp., supra*).

In sum, Traynor should not be permitted to shield itself from the ultimate liability for its own employee's injuries, since it was the party actually responsible for the accident. Accordingly, Najjar may rightfully rely on the indemnification agreement which it contemplated would protect itself from the acts of its subcontractor. The judgment therefore must be affirmed insofar as appealed from.

MOLLEN, P. J., MARGETT and WEINSTEIN, JJ., concur.

Judgment of the Supreme Court, Kings County, entered December 2, 1980, affirmed insofar as appealed from, with costs.