JOSEPH F. KENNY et al., Respondents, v GEORGE A. FULLER Co., Defendant and Third-Party Plaintiff-Respondent-Appellant. THOMAS CRIMMINS CONTRACTING CO. et al., Third-Party Defendants-Respondents; HARRIS STRUCTURAL STEEL CO., INC., Third-Party Defendant-Appellant.

Second Department, June 1, 1982

APPEARANCES OF COUNSEL

*Quirk & Bakalor, P. C. (Richard Bakalor* and *Jeffrey J. Ellis* of counsel), for appellant.

*Leonard A. Sheft & Associates (Richard T. Farrell* of counsel), for respondent-appellant.

*Craig & Skydel (McNulty, Dwyer & Duffy, P. C. [John F. McNulty]* of counsel), for third-party defendants-respondents.

*Sacks & Sacks (Melvin Sacks* and *Charles Strugatz* of counsel), for respondents.

OPINION OF THE COURT

GULOTTA, J.

Joseph Kenny (hereinafter plaintiff), an employee of the Harris Structural Steel Co. (hereinafter Harris), was injured when he fell approximately 35 feet while working on the construction of a new building at Hunter College owned by the Dormitory Authority of the State of New York (hereinafter the Authority). The Authority had contracted with the George A. Fuller Co. (hereinafter Fuller) to be the construction manager on the project, and had also entered into separate agreements with Harris, for the erection of the structural steel, and with the Thomas Crimmins Contracting Co., Inc. (hereinafter Crimmins), for the excavation and construction of the foundation walls. Crimmins had, in turn, subcontracted with the Brisk Waterproofing Co., Inc. (hereinafter Brisk) to waterproof the foundation walls. Under the Authority's agreements with Harris and Crimmins, Fuller was designated as the owner's "representative" in the performance of the work. In addition, these agreements included a "save harmless" clause running to the benefit of the owner and its agents. It is undisputed that the plaintiff was not provided with any scaffolding, safety belts, netting, or other safety equipment in the performance of his work.

Plaintiff and his wife subsequently commenced this suit for personal injuries and loss of services against Fuller, the construction manager, for alleged violations of sections

200, 240, 241 and 241-a of the Labor Law, but only sections 240 and 241 are involved on this appeal.* Fuller thereupon commenced a third-party action against Harris, Crimmins and Brisk for contractual and common-law indemnification. Insofar as is here pertinent, the parties stipulated at trial that the plaintiffs, if successful, would be entitled to recover the sum of $1,000,000 as damages from Fuller, and that the latter would be entitled to the entry of a "judgment over" in an identical amount against those (if any) of the third-party defendants which were ultimately found to be liable to it on the theory of contractual indemnification.

After all of the evidence was submitted on the issue of liability, the court directed a verdict in favor of the plaintiffs and against Fuller on the ground of the latter's violation of sections 240 (subd 1) and 241 (subd 6) of the Labor Law. The remaining questions were then submitted to the jury for determination, and while Harris was found to have acted negligently, codefendants Crimmins and Brisk were both exonerated. The court thereupon granted third-party plaintiff Fuller's motion for a directed verdict against Harris on the theory of contractual indemnification and this appeal followed.

The principal issue raised on appeal is whether Fuller was entitled to contractual indemnification from Harris. The plain and simple language used in the contract between Harris and the Authority, as well as the surrounding facts and circumstances, lead this court to conclude that the indemnification provision required Harris to indemnify Fuller, as agent of the owner, for all damages incurred as a result of Harris' work, regardless of how the claim arose (see *Vey v Port Auth. of N.Y. & N.J.*, 54 NY2d 221).

In order to determine whether Harris, the claimed indemnitor, may be held liable to Fuller on the theory of contractual indemnification, it must first be determined whether Fuller, the claimed indemnitee, was properly held liable to the plaintiffs under sections 240 (subd 1) and 241 (subd 6) of the Labor Law (see *Greenberg v City of New York*, 81 AD2d 284). Insofar as is here applicable, these statutes provide that *"[a]ll contractors and owners and*

---

* The Authority was not named as a party defendant.

*their agents* * * * in the erection * * * of a building * * * shall furnish or erect, or cause to be furnished or erected * * * scaffolding * * * and other devices * * * to give proper protection to a person so employed" (Labor Law, § 240, subd 1; emphasis supplied), and that in "[a]ll areas in which construction * * * is being performed * * * [they shall] provide reasonable and adequate protection and safety to [all] persons employed therein" (Labor Law, § 241, subd 6).

The primary distinction between sections 240 (subd 1) and 241 (subd 6) is that the latter requires a determination of whether the safety measures actually employed on a job site were "reasonable and adequate" (see *Long v Forest-Fehlhaber,* 55 NY2d 154; *Monroe v City of New York,* 67 AD2d 89, 107-108), while the former is mandatory in its nature and imposes absolute liability for any injury arising from its breach (see *Haimes v New York Tel. Co.,* 46 NY2d 132; *Koenig v Patrick Constr. Corp.,* 298 NY 313; *Lagzdins v United Welfare Fund Security Div. Marriott Corp.,* 77 AD2d 585; *Monroe v City of New York, supra,* pp 105-106). The question of comparative negligence and/or circumstantial reasonableness is therefore irrelevant under subdivision 1 of section 240 (see *Sullivan v Held,* 81 AD2d 663, mot for lv to app den 54 NY2d 607; *Rea v Elia Bldg. Co.,* 79 AD2d 1102; *Pereira v Herman Constr. Co.,* 74 AD2d 531). Harris, however, maintains that Fuller is neither a "contractor" nor an "agent" of the owner within the purview of these statutes, and that Fuller may not, therefore, be held liable under section 240 or 241. We disagree, and conclude that Fuller, as the construction manager, was both a contractor and an agent of the owner within the meaning of the applicable provisions.

When, in 1969, the Legislature amended section 240 of the Labor Law and repealed the then existing section 241 and enacted the present provision, it was noted, *inter alia,* that the Labor Law was enacted for the sole purpose of protecting workmen, and that, under the state of the law as it then existed (i.e., prior to the proposed amendment), a subcontractor, because he was named in sections 240 and 241, could effectively relieve an owner or general contractor of his liability for safe work practices by the routine

purchase of basic workers' compensation coverage. The sponsoring memorandum continued:

"Under the * * * sections [proposed to be amended] an owner and/or contractor would be inclined to choose a subcontractor predicated on price, disregarding the subcontractor's safety measures. This, of course, is dangerous to the welfare and health of the men working on the project and would defeat the original intent of the Labor Law * * *

"The [proposed] bill restores to the owner and *general* contractor the responsibility, where it properly belongs, in their selection of subcontractors and in the progress of the work in regard to the safety of all men on the job. Under * * * Sections 240 and 241 [as they now read] * * * the non-delegable duty has shifted from the general contractor and owner to the subcontractor, making him responsible for many things that he has no control of, *such as coordination and overall* supervision of the work * * *

"In order to accomplish liability upon the owner and contractor and to specifically provide a greater measure of safety for workers, [former] Section 241, which was eliminated in 1962, is reinstated by this bill" (sponsoring memorandum of Senator Calandra and Assemblyman Amann, NY Legis Ann, 1969, p 408; emphasis supplied).

The Legislature, however, in addressing the problem, merely chose to employ the generic term "contractor", and in the absence of any statutory definition, varying interpretations have been placed upon that term in attempting to determine which "contractors" ought to be encumbered with nondelegable responsibilities under the relevant Labor Law provisions (compare *Rosenbaum v Lefrak Corp.,* 80 AD2d 337, with *Page v La Buzzetta,* 73 AD2d 483, apps dsmd 50 NY2d 1059, mot for lv to app dsmd 51 NY2d 769; see, also, *Waters v Patent Scaffold Co.,* 75 AD2d 744, app dsmd 53 NY2d 704).

In 1981, the Court of Appeals addressed the issue by holding, *inter alia,* that "prime contractors" lacking privity with the general contractor are *not* to be held liable under sections 240 and 241 unless they have been delegated "the authority to supervise and control" that portion of the

project on which the injury occurs (see *Russin v Picciano & Son,* 54 NY2d 311, 315, 318). Where such a delegation *has* been made, however, the *prime* contractor becomes a statutory "agent" of the owner or the *general* contractor (*Russin v Picciano & Son, supra,* p 318). Thus, the court stated (pp 317-318):

"Although sections 240 and 241 now make nondelegable the duty of an owner or general contractor to conform to the requirement of those sections (*Haimes v New York Tel. Co.,* 46 NY2d 132; *Allen v Cloutier Constr. Corp.,* 44 NY2d 290, *supra*), the duties themselves may in fact be delegated (*Page v La Buzzetta,* 73 AD2d 483). When the work giving rise to these duties has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor. Only upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241. To hold otherwise * * * would lead to improbable and unjust results and would directly contravene the express legislative history accompanying the 1969 amendments to these provisions.

"Our interpretation of the statutory 'agent' language appropriately limits the liability of a contractor as agent for a general contractor or owner for job site injuries to those areas and activities within the scope of the work delegated or, in other words, to the particular agency created."

The *Russin* case, however, is a limited holding, and is directly applicable to the case at bar only insofar as it relates the status of a statutory "agent" to the legislative concept of "coordination and overall supervision of the work" (NY Legis Ann, 1969, p 408).

The specific question of whether a construction manager can be held to be a "contractor" within the meaning of sections 240 and 241 of the Labor Law was answered in the affirmative in *Carollo v Tishman Constr. & Research Co.* (109 Misc 2d 506, 509), where the court examined the parties' contractual obligations and determined that the

"construction manager" was substantially in charge of and in supervisory control of the worksite. Significant to that determination was the construction manager's contractual obligation (p 508): " 'to provide design consultation on the project; to monitor project costs * * *; to schedule the project efficiently for both design development and construction phases * * *; and to review the design of the project' ". Recognizing that the duties of a construction manager and a general contractor are not identical, the court concluded that Tishman was nevertheless a "contractor" within the meaning of sections 240 and 241 since it had the penumbral obligation to co-ordinate the various trades and provide a safe work place. Thus, the court concluded (*supra*, p 509): "It would defeat the purpose of the statute to allow a party substantially in charge of and supervising the entire job to * * * escape * * * responsibility [as a contractor either] by a change of its title or an insignificant reduction in its duties * * * [i.e.] because it does not have all [of] the trappings of a general contractor." We find this reasoning sound and deem it applicable to the case at bar, as it comports with the legislative purpose of placing absolute liability upon the party or parties responsible for co-ordinating and supervising the entire construction project.

In the instant case, Fuller, under its agreement with the owner was required, *inter alia,* to analyze design programs and costs; co-ordinate implementation of the design; prepare all cost analyses for the owner; continuously review and make recommendations concerning construction detailing; review the contract documents; *recommend the establishment and implementation of a comprehensive safety program for the project;* and, during the construction stage, establish procedures for and maintain co-ordination among the owner, architect, the various contractors and itself concerning *all aspects of the project* and regularly observe the work being performed by the contractors by inspecting the site for the purposes of controlling quality, co-ordinating, expediting and reporting construction progress. Absent a more specific legislative directive, one would be hard-pressed to envision a "contractor" better fitting the stated statutory purpose.

A "construction manager" such as Fuller is precisely what the term denotes, i.e., an entity which manages or supervises all phases of the construction project. Indeed, the evidence adduced at the trial confirms that Fuller acted in its supervisory capacity in a matter directly affecting this lawsuit when third-party defendant Harris' safety co-ordinator went to Fuller's representative at the jobsite just a few days prior to the accident in an effort to resolve what the former perceived to be a safety problem regarding a "slippery" condition allegedly being created by the waterproofers. We therefore hold that a general construction manager charged with the duty of co-ordinating "all aspects" of a construction project is a "contractor" with nondelegable duties under sections 240 and 241 of the Labor Law.

In addition, this court is of the further view that Fuller was an "agent" of the owner within the meaning of sections 240 and 241 and, thus, was independently chargeable with the duties imposed by the foregoing sections. Here, the agreement between the Authority and Harris specifically provided that "in the performance of [this] work the Owner shall be represented by [the] George A. Fuller Company". Having been designated by the owner as its contractual agent in the performance of the structural steel contract, Fuller had the undoubted authority to "supervise and control" this aspect of the work (see *Russin v Picciano & Sons*, 54 NY2d 311, *supra*).

In light of the foregoing and in view of the evidence adduced at the trial, it is our belief that the trial court acted properly in granting judgment in favor of the plaintiffs against Fuller under subdivision 1 of section 240 of the Labor Law (see *Pereira v Herman Constr. Co.*, 74 AD2d 531, *supra; Cardile v D'Ambrosia*, 72 AD2d 544), as it is undisputed that absolutely no safety measures were employed at the jobsite in order to protect the plaintiff from potential injury. Such an omission was in derogation of Fuller's nondelegable duty to "furnish or erect, or cause to be furnished or erected * * * scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices * * * to give proper protection to a person * * * employed [in the erection of a building]"

(Labor Law, § 240, subd 1). However, the further question of whether Fuller might also be held liable pursuant to subdivision 6 of section 241 of the Labor Law presented a question of fact to be resolved by the jury (see *Monroe v City of New York,* 67 AD2d 89, *supra; Lagzdins v United Welfare Fund Security Div. Marriott Corp.,* 77 AD2d 585, *supra*). Thus, the court erred in directing a verdict in favor of the plaintiffs on this aspect of the case (see *Long v Forest-Fehlhaber,* 55 NY2d 154, *supra; Monroe v City of New York, supra*). Nevertheless, a new trial will not be required, as the court correctly found Fuller to be liable under subdivision 1 of section 240. Having concluded that the trial court properly determined the issue of liability in favor of the plaintiffs and against Fuller, we now consider the issue of indemnification.

■ In this arm's length transaction between sophisticated business concerns, the designation of Fuller as the owner's representative in the Harris contract is susceptible of little misinterpretation. The words "representative" and "agent" have been deemed synonymous and interchangeable (see *Sunset Milling & Grain Co. v Anderson,* 39 Cal 2d 773, 778; *Texas Power & Light Co. v Adamson,* 203 SW2d 275, 276 [Tex]). Moreover, the mere fact that Fuller was designated as an independent contractor under *its* agreement with the Authority does not supplant the clear intent to have Fuller function as the Authority's agent vis-à-vis the work to be performed under the structural steel contract with Harris (see *Ackert v Ausman,* 29 Misc 2d 962, 967, affd 20 AD2d 850).

Harris, under its contract with the Authority, agreed to assume the "entire responsibility and liability for any and all damage * * * to all persons * * * arising out of, or occurring in connection with * * * the work provided for in this contract" and to "indemnify and save harmless the owner, *its agents,* servants and employees, from and against any and all loss * * * that the owner, its agents, servants and employees, may sustain as the result of any such claim" (emphasis supplied). This strong, unequivocal hold-harmless provision leaves little doubt that Harris was to be held responsible for any and all claims made against Fuller *as the owner's representative* in the performance of

the Harris agreement. As such a claim has now been made and sustained, the liability of Harris has become fixed (see *Vey v Port Auth. of N. Y. & N. J.,* 54 NY2d 221, *supra; Gross v Sweet,* 49 NY2d 102, 108; *Hogeland v Sibley, Lindsay & Curr Co.,* 42 NY2d 153; *Levine v Shell Oil Co.,* 28 NY2d 205, 213). In view of the foregoing, there is no need to consider the further question of common-law indemnification.

Finally, we consider Fuller's contention that the jury improperly exonerated cothird-party defendants Brisk and Crimmins. The evidence reveals that the jury may well have concluded that the waterproofers did not contribute to the plaintiff's injury in any way. Though there may be differing conclusions to be drawn from the testimony, we do not find the jury's verdict to be contrary to the weight of the evidence (see *Goehle v Town of Smithtown,* 81 AD2d 607, affd 55 NY2d 995; *Muth v J & T Metal Prods. Co.,* 74 AD2d 898, mot for lv to app dsmd 51 NY2d 745).

The judgment must, accordingly, be affirmed.

MOLLEN, P. J., WEINSTEIN and THOMPSON, JJ., concur.

Judgment of the Supreme Court, Kings County, dated October 23, 1981, affirmed, without costs or disbursements.