■ DAVID J. TONKING et al., Plaintiffs, v PORT AUTHORITY OF NEW YORK AND NEW JERSEY et al., Defendants. (And a Third-Party Action.) BOVIS LEND LEASE LMB, INC., Formerly Known as LEHRER MCGOVERN BOVIS, INC., Second Third-Party Plaintiff-Appellant, v V.P.H. MECHANICAL CORP., Second Third-Party Defendant-Respondent. [768 NYS2d 311]—

---

Order, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered May 22, 2003, which, inter alia, granted the motion of second third-party defendant V.P.H. Mechanical (VPH) to dismiss the second third-party complaint brought against it by second third-party plaintiff Bovis Lend Lease LMB, Inc. (Bovis) pursuant to CPLR 3211 (a) (1) and (7), affirmed, without costs.

Bovis's third-party claim for contractual indemnification was properly dismissed. The agreement relied upon by Bovis, between VPH and defendant and third-party plaintiff Port Authority, in relevant part entitled the Port Authority and its agents to indemnification from VPH for liability arising from negligence by VPH in the performance of the contracted-for construction work. It is Bovis's contention that it has standing to seek indemnification under this agreement as an agent of the Port Authority. However, an agreement pursuant to which an obligation to indemnify is imposed must be strictly construed "to avoid reading into it a duty which the parties did not intend to be assumed [citations omitted]. *The promise should not be found unless* it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances" (*see Hooper Assoc. v AGS Computers*, 74 NY2d 487, 491-492 [1989] [emphasis added]).

Here, the contracting parties did not, by using the term "agent," clearly manifest an intention to impose upon VPH the obligation to indemnify Bovis, a subsequently retained construction manager. Indeed, by analogy with the Second Department's reasoning in *Lipshultz v K & G Indus.* (294 AD2d 338 [2002]), had the parties to the Port Authority/VPH contract intended for VPH to assume an obligation to indemnify a non-Port Authority construction manager, they would have manifested their intention in unmistakable terms instead of using the general, often referentially treacherous term "agent," particularly since the term "construction manager" is well defined and frequently employed in the subject agreement and because the existence of an agency relationship between the Port Authority and a separately and subsequently retained construction management firm such as Bovis would, predictably, have been disputed (*see id.* at 338-339). We have considered Bovis's remaining arguments and find them unavailing. Concur—Williams, Lerner and Gonzalez, JJ.

Andrias, J.P., and Ellerin, J., dissent in a memorandum by Ellerin, J., as follows: I would reverse the motion court's order and reinstate Bovis's third-party claim against second third-party defendant VPH for contractual indemnification on the ground that an obligation on the part of VPH to indemnify Bovis can be clearly implied from the contract between VPH and defendant and third-party plaintiff Port Authority.

The majority correctly cites *Hooper Assoc. v AGS Computers* (74 NY2d 487, 491 [1989]) for the proposition that "[w]hen a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." However, *Hooper* instructs that "[t]he promise [may] be found [if] it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances" (*id.* at 491-492 [citations omitted]).

The indemnification clause of its contract with the Port Authority provides that VPH (the Contractor) assumes the risks of certain losses or damage caused by its negligence during the performance of the work, and that "[t]he provisions of this numbered clause shall also be for the benefit of the Commissioners, officers, agents and employees of the Authority, so that they shall have all the rights which they would have under this numbered clause if they were named at each place above at which the Authority is named." Thus, VPH is obligated to indemnify Bovis for such losses or damage if it can be clearly implied from the contract that the construction manager is an agent of the Port Authority.

The term "construction manager" is well defined and frequently employed in the contract between VPH and the Port Authority. "Construction Manager" is defined as "the firm and its employees retained by the Authority and authorized in writing by the Authority, or specified in this Contract to represent the Engineer in administering only the various aspects of this Contract specified in this Contract." "Engineer" is separately defined as the manager of construction of the world trade department of the Authority. Thus, the Port Authority designated the construction manager as its "contractual agent" in the administration of certain aspects of its contract with VPH (*see Kenny v Fuller Co.*, 87 AD2d 183, 191 [1982] ["The words 'representative' and 'agent' have been deemed synonymous and interchangeable"]; *see also* Black's Law Dictionary 64 [7th ed 1999] [agent defined as "[o]ne who is authorized to act for or in place of another; a representative"]).

The term "Construction Manager" is then used throughout

the general provisions of the contract specifications, identifying aspects of the administration of the contract for which the Port Authority retained a construction manager to represent it. For instance, the contract requires VPH to prepare a progress schedule for the construction manager's approval, to submit a safety program for the construction manager's review and approval, and to work "under the direction of the Construction Manager in all respects" in coordinating with all other work on the construction site. The contract also contains provisions that explicitly delineate the construction manager's role as the Port Authority's agent. For instance, "The Engineer shall be the sole judge as to whether a proposed substitution [for 'a proprietary item or make' specified in the contract] will be approved, and no substitution shall be ordered or utilized without the Construction Manager's prior written approval," and all work and all construction, processes of manufacture and methods of construction "shall be at all times and places subject to the inspection of the Engineer, acting personally or through the Construction Manager."

Thus, although the term "agents" is not defined in the contract, the designation of the construction manager as the Port Authority's representative defines the construction manager as its agent. Moreover, this agency relationship is manifest in contract provisions referring to the construction manager. I would find therefore that a promise on VPH's part to indemnify Bovis to the extent that it indemnifies the Port Authority can be clearly implied from the language and purpose of the agreement.