[831 NE2d 408, 798 NYS2d 351]

TIMOTHY WALLS et al., Respondents, v TURNER CONSTRUCTION COMPANY, Appellant, et al., Defendant.

Decided May 5, 2005

### APPEARANCES OF COUNSEL

*Malapero & Prisco*, New York City (*Andrew L. Klauber* and *Frank J. Lombardo* of counsel), for appellant.

*Ferro Kuba Bloom Mangano Gacovino & Lake, P.C.*, and *Pollack, Pollack, Isaac & De Cicco*, New York City (*Brian J. Isaac* and *Brett I. Bloom* of counsel), for respondents.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Turner Construction Company entered into a contract with the Massapequa Union Free School District to serve as its construction manager for capital improvement projects at several schools, including McKenna Elementary School. There was no general contractor on this job. As part of its contract, Turner assumed responsibility for contractual, statutory, and regulatory compliance by all other trade contractors involved in the school district's capital improvement project. If Turner became aware

of any unsafe condition or practice at the work site that might constitute a hazard to users of the properties, it was contractually required to "immediately direct the Trade Contractors to cease work which constitutes such unsafe practice or hazardous condition." In addition, Turner was to monitor performance by all trade contractors, enforce the terms of the trade contracts and take action within its reasonable control to minimize the loss of life and damage to property during emergencies. Turner was further required to periodically advise the owner and architect of safety issues and concerns.

As the Turner employee who was the superintendent of the McKenna site acknowledged in her deposition, "[i]f there was something that was improper that was being done on the job site, then we were able to stop it, yes." She further admitted that Turner had the authority to control activities at the site and that her duties included being in charge of safety at the work site, as well as compiling logs, issuing monthly safety reports, surveying field work and the like. Indeed, Turner's Safety, Health and Environmental Policy manual specifically provided that the project superintendent "[c]reate a ZERO TOL-ERANCE POLICY for project safety program violations."

During the course of this improvement project, the school district also contracted with Jordan Construction Company for replacement of windows at the school. On August 21, 1999, plaintiff was working as a special employee of Jordan on the premises of the McKenna Elementary School within the oversight of Turner. During the window replacement project, plaintiff fell 12 to 14 feet while trying to construct scaffolding on a second floor window. No safety equipment had been supplied to plaintiff. Having suffered various injuries to his legs, ankle and back, plaintiff commenced this action against Jordan and Turner and was awarded summary judgment on his Labor Law § 240 (1) cause of action. In granting summary judgment, the trial court determined that based on these facts, Turner was a statutory agent of the school district for purposes of the Labor Law. The Appellate Division affirmed, one Justice dissenting, in part, and certified to us the question whether the order was correct.

Although a construction manager of a work site is generally not responsible for injuries under Labor Law § 240 (1), one may be vicariously liable as an agent of the property owner for injuries sustained under the statute in an instance where the manager had the ability to control the activity which brought

about the injury (*see Russin v Picciano & Son*, 54 NY2d 311, 317-318 [1981]; *see also Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 878 [1993]). "When the work giving rise to [the duty to conform to the requirements of section 240 (1)] has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor" (*Russin*, 54 NY2d at 318). Thus, unless a defendant has supervisory control and authority over the work being done when the plaintiff is injured, there is no statutory agency conferring liability under the Labor Law (*see Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 293 [2003]).

Defendant, Turner, in this instance had such supervisory control and authority. Turner was not the "typical construction manager" as posited by the dissent (dissenting op at 866). On this job, Turner functioned as the eyes, ears, and voice of the owner. Turner's broad responsibility was both that of coordinator and overall supervisor for all the work being performed on the job site. Turner was under a contractual obligation to monitor Jordan's window replacement work and to protect Jordan's employees. Accordingly, Turner also had the duty to make sure that workers on site were furnished with the proper safety gear. The dissent's characterization of these contractual requirements as "a few benign safety-enhancing provisions" (dissenting op at 867) is untenable. Had Turner no such broad responsibility over plaintiff's work, Turner would not be statutorily liable. .

The label of construction manager versus general contractor is not necessarily determinative. Thus, on the facts of this case, given (1) the specific contractual terms creating agency, (2) the absence of a general contractor, (3) Turner's duty to oversee the construction site and the trade contractors, and (4) the Turner representative's acknowledgment that Turner had authority to control activities at the work site and to stop any unsafe work practices, we agree that the Appellate Division was correct in holding Turner liable as a statutory agent of the school district under Labor Law § 240 (1).

Turner's remaining argument that plaintiff was a recalcitrant worker is completely unsupported and without merit.

R.S. SMITH, J. (dissenting). I agree with the majority (at 863) that "a construction manager of a work site is generally not responsible for injuries under Labor Law § 240 (1)." I think the decision in this case, however, fails to apply that rule correctly, and I therefore dissent.

Labor Law § 240 (1) requires "contractors and owners and their agents" to furnish proper protection against elevation-related risks to workers engaged in certain construction activities. This statute, as we have interpreted it, imposes civil liability that in some ways goes well beyond ordinary liability for negligence: the duty it imposes is nondelegable—that is, even a contractor, owner or agent who did not supervise the work involved may be liable under the statute—and if the statute has been violated, it is irrelevant whether the plaintiff's own negligence contributed to the resulting injury. The result, as judges in this state well know, has been an enormous quantity of Labor Law § 240 (1) litigation.

In one important way, however, our interpretation of the statute has not been expansive: we have never given the broadest possible reading to the words "contractors and owners and their agents." On the contrary, we have limited the definition of the term "agents" to those who have "authority to supervise and control [the] work" from which an injury arises (*Russin v Picciano & Son*, 54 NY2d 311, 318 [1981]). For example, while architects and engineers employed by an owner to work on a construction project may be the owner's "agents" in some senses, these architects and engineers do not normally have Labor Law § 240 (1) liability (*Fox v Jenny Eng'g Corp.*, 70 NY2d 761 [1987], *affg* 122 AD2d 532 [4th Dept 1986]). And prime contractors that are not general contractors are not "contractors" within the meaning of the statute as to work that has not been specifically delegated to them (*Russin*, 54 NY2d at 315). We have never decided, however, whether construction managers are either "contractors" or "agents" within the meaning of the statute. Appellate Division decisions are divided on this question (*compare, e.g., Phillips v Wilmorite, Inc.*, 281 AD2d 945 [4th Dept 2001] and *Loiacono v Lehrer McGovern Bovis, Inc.*, 270 AD2d 464 [2d Dept 2000] [both holding construction managers not liable] *with Kenny v Fuller Co.*, 87 AD2d 183 [2d Dept 1982] [holding construction manager liable]; *see also Balthazar v Full Circle Constr. Corp.*, 268 AD2d 96 [1st Dept 2000] [holding issues of fact precluded summary judgment against a construction manager]).

The principal difference between a general contractor and a construction manager is that the former has decision-making authority, while the latter's role is primarily advisory. A general contractor chooses the subcontractors, and is responsible for telling them what to do. Where an owner hires a construction manager, there often is no general contractor; the owner, rely-

ing on the construction manager's advice, itself retains and supervises a number of prime contractors, no one of which is in overall charge of the job. Since the owner normally follows the advice the construction manager gives, the line between authority and advice can become blurred, and it would be unsurprising to find that the word of a construction manager, when spoken on a job site, carries considerable weight with contractors and their employees. This could be the basis for an argument that construction managers are not materially different from general contractors and should have the same liability under Labor Law § 240 (1).

But I believe—and the majority seems, in principle, to agree— that we should reject this argument and should adhere to our holding in *Russin* that only persons who have the *"authority* to supervise and control" the relevant work are statutory "agents." Where an owner retains for itself, and does not delegate to a general contractor, the power to choose contractors and supervise the job, it is the owner, not the owner's advisors— however well-heeded their advice might be—that should have Labor Law § 240 (1) liability. The burdens that the statute places on owners, contractors and their agents are severe; a defendant may be liable to a worker who may have been primarily at fault, even where the defendant itself had no role in supervising the task at issue, and thus was not at fault at all. It is fair to allow owners and those with whom they contract to determine, by their contracts, on whom to confer the decision-making authority that carries with it this kind of exposure.

Plaintiffs argue that, even if decision-making authority is essential to Labor Law § 240 (1) liability, Turner Construction Company should be held liable here because it "was functioning as a general contractor and/or general supervisor of the job, with overarching and complete responsibility for site supervision and safety which it actually carried out." The majority is apparently persuaded by this argument. As I view the record, however, Turner was a typical construction manager, did not have the kind of authority that a general contractor has, and therefore should not be held liable.

A reading of the contract between Turner and the owner of the construction site shows that it was the owner, not Turner, that had decision-making authority. The most important provisions give Turner the duty to "monitor the performance of the Work," to "conduct walk-throughs at each work site" and to "report any identified deficiencies" in the performance of

contractors. If Turner's employees discovered failures by contractors to perform their obligations, Turner's duty was to "promptly notify" the architect and the owner, and to make recommendations to the architect for correcting the problem.

It is true that some phrases in the contract seem to confer more than advisory power on Turner in specific situations. The most relevant to this case is that Turner was empowered to "require compliance by the Trade Contractors with all applicable Federal, state and local statutes, rules, regulations and codes regarding safety"; but Turner was also required to "advise the Owner of any identified failure of the Trade Contractors in this regard." The majority also relies on language requiring that Turner "immediately direct the Trade Contractors to cease work" in the event of "any unsafe practice or condition at the work site which would constitute a hazard to school children or other users of facilities or properties in proximity to the work site." It is not clear that this provision is even relevant to practices that endangered construction workers, rather than school children and other civilians—but in any event, a few benign safety-enhancing provisions in a contract should not be a basis for imposing Labor Law § 240 (1) liability on a company whose role was primarily advisory. Plaintiffs do not claim that Turner violated any of the contract's provisions relating to safety, but only that its authority to promote safety made it a statutory "agent." I find the argument unpersuasive.

Nor do I think the deposition testimony of Turner's on-site representative justifies imposing liability on Turner. The representative's description of her functions essentially tracked the contract language. Indeed, plaintiffs complain in their brief that this witness "attempted to limit Turner's responsibility through carefully tailored testimony." Plaintiffs nevertheless seize on a few bits of the deposition, including the statement the majority quotes that Turner could stop "something that was improper that was being done on the job site." This testimony need not be read as going any further than the contractual provision permitting Turner to stop work when the safety of "school children or other users" was endangered—but if the witness mistakenly understood her authority to be broader than what the contract called for, that error should not expose Turner to Labor Law § 240 (1) liability. There is no evidence that Turner ever actually did stop work on the job; the question of when it theoretically could have done so should be determined by the contract, not a witness's description of it.

In sum, I see no material difference between Turner's role and the ordinary, advisory role of a construction manager. Thus I think the principle, correctly stated by the majority, that "a construction manager of a work site is generally not responsible for injuries under Labor Law § 240 (1)" should lead to dismissal of the complaint.

Accordingly, I would reverse the order of the Appellate Division and answer the certified question in the negative.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK and GRAFFEO concur in memorandum; Judge R.S. SMITH dissents and votes to reverse in an opinion in which Judges ROSENBLATT and READ concur.

Order affirmed, etc.