| **Barreto v Board of Mgrs. of 545 W. 110th St. Condominium** |
|:---:|
| 2024 NY Slip Op 30489(U) |
| February 14, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 160421/2017 |
| Judge: Louis L. Nock |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. LOUIS L. NOCK** | **PART** | **38M** |
| | *Justice* | | |

------------------------------------------------------------------------------X

EDUARDO BARRETO,

                              Plaintiff,

                   - v -

THE BOARD OF MANAGERS OF 545 WEST 110TH
STREET CONDOMINIUM, 545 WEST 110TH STREET
CONDOMINIUM, RESIDENTIAL MANAGEMENT GROUP,
LLC, CHELSEA CLEANING SERVICES, INC., and
CHELSEA WINDOW CLEANING, INC.,

                             Defendants.

------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 160421/2017 |
| **MOTION DATE** | 08/19/2022, 10/14/2022, 10/14/2022 |
| **MOTION SEQ. NO.** | 003 004 005 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document numbers (Motion 003) 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 113, 143, 144, 145, 146, 149, 150, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 174, 175, 179, 180, 183, 184, and 190

were read on this motion for                       SUMMARY JUDGMENT             .

The following e-filed documents, listed by NYSCEF document numbers (Motion 004) 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 147, 151, 168, 169, 170, 176, 181, 185, and 186

were read on this motion for                       SUMMARY JUDGMENT             .

The following e-filed documents, listed by NYSCEF document numbers (Motion 005) 136, 137, 138, 139, 140, 141, 142, 148, 152, 164, 165, 166, 167, 171, 172, 173, 177, 178, 182, 187, and 188

were read on this motion for                       SUMMARY JUDGMENT             .

LOUIS L. NOCK, J.

Upon the foregoing documents, plaintiff's motion for summary judgment on its claims under Labor Law §§ 240(1) and 241(6) (Mot. Seq. No. 003); the motion by defendants Board of Managers of 545 West 110th Street Condominium (the "Board"), 545 West 110th Street Condominium (the "Owner"), and Residential Management Group, LLC (the "Manager," and collectively, the "Board defendants") for summary judgment dismissing the complaint and all cross-claims (Mot. Seq. No. 004); and the motion of defendant Chelsea Cleaning Services, Inc.

**160421/2017   BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**
**Motion No.  003 004 005**

**Page 1 of 13**

1 of 13

[* 1]

d/b/a Chelsea Window Cleaning, incorrectly sued hereunder as Chelsea Window Cleaning, Inc. ("Chelsea"), for summary judgment dismissing the complaint and all cross-claims (Mot. Seq. No. 005), are consolidated for disposition in accordance with the following memorandum.

**Background**

Plaintiff is a window washer, employed by nonparty Mark Prince LLC (Barreto 2018 EBT tr, NYSCEF Doc. No. 102 at 71). On the day of the accident, plaintiff was dispatched to the building located at 545 West 110th Street, New York, New York, to wash the exterior windows (*id.*). Plaintiff was to rappel down the side of the building, for which he was given a rope main line and a boatswain's chair (Barreto 2019 EBT tr, NYSCEF Doc. No. 103 at 21, 27, 69-70). Additionally, plaintiff had a safety line, which was anchored to the roof to prevent him from falling in the event of a break or other problem with the main line (Barreto 2018 EBT tr, NYSCEF Doc. No. 102 at 57; Barreto 2019 EBT tr, NYSCEF Doc. No. 103 at 21). The safety line was attached to plaintiff's harness with a lanyard, and a rope grab between the safety line and the lan1yard was meant to lock in place and arrest any potential fall (Barreto 2018 EBT tr, NYSCEF Doc. No. 102 at 56-5§7; Barreto 2019 EBT tr, NYSCEF Doc. No. 103 at 21). The ropes were tied off at iron anchors on the roof of the building (Barreto 2018 EBT tr, NYSCEF Doc No. 102 at 66, 75, 101). The balconies of the buildings were surrounded by smooth railings, under which were stainless steel mesh panels (balcony photographs, NYSCEF Doc. No. 127).

While cleaning the upper windows of the building, plaintiff's main rope parted and he fell approximately 12-15 feet to a terrace below (Barreto 2018 EBT tr, NYSCEF Doc. No. 102 at 92; Barreto 2019 EBT tr, NYSCEF Doc. No. 103 at 42). Plaintiff testified that the lanyard did not grab the safety line and arrest his fall, even though the rope grab was positioned above his head (Barreto 2018 EBT tr, NYSCEF Doc. No. 102 at 144; Barreto 2019 EBT tr, NYSCEF Doc.

**160421/2017  BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**       **Page 2 of 13**
**Motion No.  003 004 005**

2 of 13

[* 2]

No. 103 at 57-58). While he testified that he had not encountered anything sharp while cleaning, he confirmed that the ropes had been touching metal, which he observed from his boatswain's chair (Barreto 2018 EBT tr, NYSCEF Doc. No. 102 at 135, 151-153, 156). He also testified that he had with him a rope guard, used to protect the ropes from rubbing on metal surfaces, but had not been using it when he fell (Barreto 2019 EBT tr, NYSCEF Doc. No. 103 at 45-48).

Johnny Guevara, the building's resident manager, testified on behalf of Owner. After plaintiff fell, Guevara went to the eleventh floor of the building with plaintiff's employer Mark Prince. Upon arriving at the balcony on the eleventh floor, he saw two ropes, one of which had been severed (Guevara EBT tr, NYSCEF Doc. No. 104 at 102; photo marked Def.'s exhibit J, NYSCEF Doc. No. 109). Prince testified that he inspected plaintiff's rope at the point where it was cut on the eleventh floor, and noticed fragments of cut rope on the stainless steel panel, from which he deduced that the rope was cut from rubbing back and forth on the steel panel (Prince EBT tr, NYSCEF Doc. No. 123 at 88-91, 94-97). In addition, Prince stated that he was told by plaintiff's coworker that plaintiff's rope grab was in fact positioned by his hip, and, therefore, could not arrest his fall (*id.* at 101-102). Further, he observed in a video recording taken of the scene that the size of the safety line did not match the rope grab, meaning that the rope grab might not have functioned correctly even if it had been above plaintiff's head (*id.* at 152-154).

### Standard of Review

Summary judgment is appropriate where there are no disputed material facts (*Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). The moving party must tender sufficient evidentiary proof to warrant judgment as a matter of law (*Zuckerman v City of N.Y.,* 49 NY2d 557, 562 [1980]). "Failure to make such prima facie showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]

**160421/2017 BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**
**Motion No. 003 004 005**

**Page 3 of 13**

3 of 13

[internal citations omitted]). Once a movant has met this burden, "the burden shifts to the opposing party to submit proof in admissible form sufficient to create a question of fact requiring a trial" (*Kershaw v Hospital for Special Surgery*, 114 AD3d 75, 82 [1st Dept 2013]). "[I]t is insufficient to merely set forth averments of factual or legal conclusions" (*Genger v Genger*, 123 AD3d 445, 447 [1st Dept 2014] [internal citation omitted]). Moreover, the reviewing court should accept the opposing party's evidence as true (*Hotopp Assocs. v Victoria's Secret Stores*, 256 AD2d 285, 286-287 [1st Dept 1998]), and give the opposing party the benefit of all reasonable inferences (*Negri v Stop & Shop*, 65 NY2d 625, 626 [1985]). Therefore, if there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]).

**Discussion**

*Common Law Negligence and Labor Law § 200*

Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Singh v Black Diamonds LLC*, 24 AD3d 138, 139 [1st Dept 2005], citing *Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). Labor Law § 200 (1) states, in pertinent part, as follows:

> All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

There are two distinct standards applicable to section 200 cases, depending on the kind of situation involved: (1) when the accident is the result of the means and methods used by a contractor to do its work, and (2) when the accident is the result of a dangerous condition that is

**160421/2017 BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**
**Motion No. 003 004 005**

**Page 4 of 13**

4 of 13

inherent in the premises (*see McLeod v Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Sts.,* 41 AD3d 796, 797-798 [2d Dept 2007]; *see also Griffin v New York City Tr. Auth.*, 16 AD3d 202, 202 [1st Dept 2005]).

"Where a plaintiff's claims implicate the means and methods of the work, an owner or a contractor will not be held liable under Labor Law § 200 unless it had the authority to supervise or control the performance of the work" (*LaRosa v Internap Network Servs. Corp.*, 83 AD3d 905, 909 [2d Dept 2011]). Specifically, "liability can only be imposed against a party who exercises *actual* supervision of the injury-producing work" (*Naughton v City of New York*, 94 AD3d 1, 11 [1st Dept 2012]). However, where an injury stems from a dangerous condition inherent in the premises, an owner or contractor may be liable in common-law negligence and under Labor Law § 200 when the owner or contractor "'created the dangerous condition causing an injury or when the owner failed to remedy a dangerous or defective condition of which he or she had actual or constructive notice'" (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011], quoting *Chowdhury v Rodriguez*, 57 AD3d 121, 128 [2d Dept 2008]).

Here, neither theory of liability avails plaintiff. It is undisputed in the record that none of the defendants actually supervised plaintiff's work. Indeed, plaintiff raises only a dangerous condition theory of liability, specifically, with regard to the steel panel that severed the rope. The court is skeptical that the steel panel constitutes an inherently dangerous condition on the premises. Assuming arguendo that it does, however, defendants adequately establish that they had no actual or constructive notice of the alleged defect, and plaintiff does not raise a material issue of fact requiring trial. As to actual notice, ne one discovered the severed rope, or that that the rope had been severed by repeated contact with the panel, until after plaintiff fell, which is undisputed. As to constructive notice, "[t]o constitute constructive notice, a defect must be

160421/2017   BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545
Motion No.  003 004 005

Page 5 of 13

visible and apparent, and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it" (*Gordon v American Museum of Natural History*, 67 NY2d 836, 837 [1986]). Guevara, the resident manager, testified that the panel was in the condition it was supposed to be in at the time of the accident (Guevara EBT tr, NYSCEF Doc. No. 104 at 107). Moreover, there had never been any prior complaints regarding the panel by any of the window washers (*id.* at 122-23). Finally, it is largely undisputed that the rope severed due to the repeated contact of the rope with the panel and the commensurate friction caused by the two objects rubbing together as plaintiff rappelled down the building. "W here the alleged defect or dangerous condition arises from the contractor's methods and the owner exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Labor Law § 200" (*Comes v New York State Elec. and Gas Corp.*, 82 NY2d 876, 877 [1993]). Based upon the foregoing, so much of defendants' motions as seek summary judgment dismissing this claim are granted.

*Labor Law § 202*

Labor Law § 202 provides, in relevant part:

> The owner, lessee, agent and manager of every public building and every contractor involved shall provide such safe means for the cleaning of the windows and of exterior surfaces of such building as may be required and approved by the [industrial board of appeals] . . . [and] shall not require, permit, suffer or allow any window or exterior surface of such building to be cleaned unless such means are provided to enable such work to be done in a safe manner for the prevention of accidents and for the protection of the public and of persons engaged in such work in conformity with the requirements of this chapter and the rules of the board of standards and appeals. A person engaged at cleaning windows or exterior surfaces of a public building shall use the safety devices provided for his protection. Every employer and contractor involved shall comply with this section and the rules of the board and shall require his employee, while engaged in cleaning any window or exterior surface of a public building, to use the equipment and safety devices required by this chapter and rules of the [industrial board of appeals].

**160421/2017 BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545** **Page 6 of 13**
**Motion No. 003 004 005**

By its terms, Labor Law § 202 "protects the cleaning of only windows and exterior surfaces" (*Bataraga v Burdick*, 261 AD2d 106, 107 [1st Dept 1999]).  "Labor Law § 202 requires the application of comparative negligence principles because statutory liability is predicated on a violation of the Industrial Code" (*Brown v Christopher St. Owners Corp.*, 2 AD3d 172, 173 [1st Dept 2003]). The rules promulgated by the Industrial Board of Appeals are set forth at 12 NYCRR 21" (*Padovano v Teddy's Realty Assoc., Ltd.*, 56 AD3d 444, 446 [2d Dept 2008]).

Here, 12 NYCRR 21.3 provides that "[n]o owner shall suffer or permit a cleaner to clean a window of his building unless it has the structural features and the anchors or other fixed devices required by this Part in respect to the authorized means and methods of cleaning used by the cleaner" (12 NYCRR 21.3[b][1]).  As set forth above, the anchors were present and utilized by plaintiff (Barreto 2018 EBT tr, NYSCEF Doc No. 102 at 66, 75, 101). The statute does not impose further requirements on Owner (*Berrios v 1115 Fifth Ave. Corp.*, 160 AD2d 655, 656 [1st Dept 1990] ["The Legislature did not impose a coextensive responsibility on owners to require and ensure the use of safety devices.  If it had intended to make owners and their agents responsible for a window cleaner's failure to use the safety devices provided, it would have so provided"]).  Plaintiff makes no argument in opposition to defendants' motions for summary judgment dismissing this claim.  Accordingly, so much of defendants' motions for summary judgment seeking dismissal of this claim are granted.

*Labor Law § 240(1)*[1]

Labor Law § 240 (1), also known as the Scaffold Law, provides, as relevant:

---

[1] Plaintiff also alleges a cause of action pursuant to Labor Law § 240(2), but makes no argument in opposition to defendants' motions for summary judgment dismissing said claim.  The statute also has no relevance to this action (*see Gaffney v BFP 300 Madison II, LLC*, 18 AD3d 403, 404 [1st Dept 2005] ["Summary judgment was also appropriate under § 240(2), as the float scaffold was elevated more than 20 feet and lacked guardrails"]). Accordingly, so much of defendants' motions seeking dismissal of the claim are granted.

**160421/2017   BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**          **Page 7 of 13**
  **Motion No.  003 004 005**

[* 7]

All contractors and owners and their agents . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

"Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold . . . or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (*Ross v Curtis-Palmer Hydro-Elec. Co*., 81 NY2d 494, 501 [1993]).  Importantly, Labor Law § 240 (1) "is designed to protect workers from gravity-related hazards . . . and must be liberally construed to accomplish the purpose for which it was framed" (*Valensisi v Greens at Half Hollow, LLC,* 33 AD3d 693, 695 [2d Dept 2006] [internal citations omitted]).

Not every worker who falls or is struck by a falling object at a construction site is afforded the protections of Labor Law § 240(1), and "a distinction must be made between those accidents caused by the failure to provide a safety device . . . and those caused by general hazards specific to a workplace" (*Makarius v Port Auth. of N.Y. & N. J.*, 76 AD3d 805, 807 [1st Dept 2010]).  Instead, liability "is contingent upon the existence of a hazard contemplated in section 240(1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (*Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]).  Therefore, to prevail on a section 240 (1) claim, a plaintiff must show that the statute was violated, and that this violation was a proximate cause of the plaintiff's injuries (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 39 [2004]).

As an initial matter, Chelsea argues that this claim should be dismissed against it because it is not a proper Labor Law defendant.  "When the work giving rise to [the duty to conform to the requirements of section 240 (1)] has been delegated to a third party, that third party then

**160421/2017   BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**          **Page 8 of 13**
Motion No.  003 004 005

8 of 13

obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor" (*Walls v Turner Const. Co.*, 4 NY3d 861, 864 [2005]).  "Thus, unless a defendant has supervisory control and authority over the work being done when the plaintiff is injured, there is no statutory agency conferring liability under the Labor Law" (*id.*).

Here, Chelsea had no supervisory authority over plaintiff's work. Chelsea was not the "coordinator and overall supervisor for all the work being performed on the job site" (*id.*). No written contract providing that Chelsea retained supervisory authority over plaintiff's employer's work exists (*cf. Rooney v D.P. Consulting Corp.*, 204 AD3d 428, 429 [1st Dept 2022] ["Although no documentary evidence of Edge's subcontract with DP was submitted, there is testimonial evidence that the subcontract made Edge responsible for performing all aspects of the sidewalk excavation, including safety procedures"]).  There is no meaningful dispute in the record as to the fact that Chelsea had no employees at the building and did not direct plaintiff's work or provide materials and safety devices for it.  Plaintiff and the Board defendants argue in opposition that Chelsea may not delegate its potential liability away, but the cases they cite are distinguishable.  In *Nascimento v Bridgehampton Const. Corp.* (86 AD3d 189, 194 [1st Dept 2011]), the contractor specifically retained the authority to direct the work in its contract with the subcontractor.  A similar provision existed in *White v 31-01 Steinway, LLC* (165 AD3d 449, 450-51 [1st Dept 2018]).  The decision in *Timmons v Lynx Contr. Corp.* (49 AD3d 382 [1st Dept 2008]) is light on detail, but enough is set forth to suggest that the contractor seeking to evade liability had also retained some level of responsibility for the injury causing work.  Since Chelsea did not retain such responsibility or supervision, this claim must be dismissed against it.[2]

_____

[2] Plaintiff and the Board defendants argue that the Workers' Compensation Board has already deemed Chelsea a general contractor, but "here is no indication in the record that this was a disputed issue at the Workers'

As to the merits of this claim, there are three points of dispute regarding the happening of plaintiff's accident: his failure to use a rope guard to prevent the steel panel from severing the rope; his use of a different size safety rope than the rope grab; and the positioning of the rope grab. Plaintiff argues that these issues are essentially irrelevant, as they at most establish comparative negligence on plaintiff's part, which is not a defense to a claim under Section 240(1). In this regard, comparative negligence is not available as a defense to such a claim because the statute holds responsible persons or entities strictly liable; allowing such persons to avoid liability because the injured worker was to some degree also negligence is contrary to the statutes purpose (*Blake v Neighborhood Hous. Servs. of New York City, Inc.*, 1 NY3d 280, 289 [2003]). Nevertheless, where adequate safety devices were provided and the fault lies entirely with plaintiff's use, misuse, or lack of use thereof, a defendant may establish that plaintiff should be barred from recovering as the "sole proximate cause of the accident" (*id.* at 290).

Here, issues of fact preclude summary judgment. With respect to the rope guard, which all agree plaintiff did not use, plaintiff and his coworker testified that the rope guard was not needed because of the smooth railing above the steel panel (Barreto 2018 EBT tr, NYSCEF Doc. No. 102 at 135, 151-53; Barreto 2019 EBT tr, NYSCEF Doc. No. 103 at 45-47; Cardenas EBT tr, NYSCEF Doc. No. 128 at 54, 141). While hindsight may indicate that plaintiff perhaps should have used the rope guard, the Board defendants offer only speculation that the rope guard would have prevented the severing of the rappelling line (*Zuckerman*, 49 NY2d at 562 ["mere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient"]). In this regard, the court notes the testimony of Cardenas, plaintiff's coworker, that the rope guards were made of nylon or hose (Cardenas EBT tr, NYSCEF Doc. No. 128 at 26, 45-46).

---

Compensation proceeding or that the WCB specifically adjudicated this issue (*Torres v Perry St. Dev. Corp.*, 104 AD3d 672, 674-75 [2d Dept 2013])

**160421/2017   BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**
**Motion No.  003 004 005**

**Page 10 of 13**

With respect to whether the rope grab was appropriately matched to the safety line, the sole support for that argument is Prince's testimony that an inappropriately sized rope grab "might not have done anything anyway" (Prince EBT tr, NYSCEF Doc. No. 123 at 152). Such testimony is too speculative to create a triable issue of fact.

There is, however, a dispute in the testimony regarding the rope grab and how plaintiff had positioned it. Contrary to the Board defendants' argument, plaintiff did not offer conflicting testimony as to the location of the rope grab, having testified that it was positioned properly above his head (Barreto 2019 EBT tr, NYSCEF Doc. No. 103 at 57-58). At an earlier deposition, he had testified that the lanyard which connected his harness to the safety line was located at his shoulders, which the Board defendants interpret to mean his rope grab was placed there as well (Barreto 2018 EBT tr, NYSCEF Doc. No. 102 at 144). There is no basis in the record for the court to make such an interpretation. Cardenas testified that he did not know where the rope grab had been positioned, but did testify that the rope grab was in good working order prior to the accident, and should have caught plaintiff if it were correctly positioned (Cardenas EBT tr, NYSCEF Doc. No. 128 at 67-68). Such a dispute must be resolved by the jury. Accordingly, the motions related to this claim are both denied.

*Labor Law § 241(6)*

Labor Law § 241 (6) provides, in pertinent part, as follows:

All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavating in connection therewith, shall comply with the following requirements:

\* \* \*

(6)     All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, [and] equipped . . . as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

**160421/2017   BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**
**Motion No.  003 004 005**

**Page 11 of 13**

11 of 13

Labor Law § 241(6) imposes a nondelegable duty of reasonable care upon owners and contractors "'to provide reasonable and adequate protection and safety' to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348 [1998]). However, cases where the work performed was "routine exterior window washing" are not within the ambit of Section 241(6) (*Wowk v Broadway 280 Park Fee, LLC*, 94 AD3d 669, 671 [1st Dept 2012]). Thus, plaintiff's motion for partial summary judgment on this claim is denied, defendants' motions for summary judgment dismissing the claim are granted, and the claim is dismissed.

Accordingly, it is hereby

ORDERED that plaintiff's motion for partial summary judgment (Mot. Seq. No. 003) is denied; and it is further

ORDERED that the Board defendants' motion for summary judgment dismissing the complaint and cross-claims (Mot. Seq. No. 004) is granted to the extent that the first, second, third, fifth, and so much of the fourth cause of action as relates to Labor Law § 240(2), as well as Chelsea's cross-claims, are severed and dismissed, and the motion is otherwise denied; and it is further

ORDERED that Chelsea's motion for summary judgment dismissing the complaint and cross-claims (Mot. Seq. No. 005) is granted in its entirety, the complaint and cross-claims against Chelsea severed and dismissed, and the Clerk of the Court is directed to enter judgment in favor Chelsea dismissing the action against it; and it is further

ORDERED that the action shall continue as to plaintiff's claim against the Board defendants for violation of Labor Law § 240(1); and it is further

**160421/2017   BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**
**Motion No.  003 004 005**

**Page 12 of 13**

12 of 13

ORDERED that this matter is respectfully referred to the Clerk of the Trial Assignment

Part to be scheduled for trial.

This constitutes the decision and order of the court.

ENTER:

*Louis L. Nock*

| 2/14/2024 | | | | |
|-----------|---|---|---|---|
| **DATE** | | | **LOUIS L. NOCK, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|------------|---|---------------|---|----------------------|---|
| | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**160421/2017   BARRETO, EDUARDO vs. BOARD OF MANAGERS OF 545**
**Motion No.  003 004 005**

**Page 13 of 13**

[* 13]