## Piletto v Partners Vll/535 Fourth Owner LLC

2025 NY Slip Op 31939(U)

June 1, 2025

Supreme Court, New York County

Docket Number: Index No. 150987/2020

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    **HON. MARGARET A. CHAN**      PART      **49M**

*Justice*

-------------------------------------------------------------------------X

RICHARD PILETTO,

                Plaintiff,

           - v -

PARTNERS VII/535 FOURTH OWNER LLC,535 4TH
AVENUE DEVELOPER LLC,XYZ PROPERTIES
INC.,DYNATEC CONTRACTING INC.,NAF PAK
PLUMBING & HEATING CORP., and QUALITY FACILITY
SOLUTIONS CORP,

               Defendants.

-------------------------------------------------------------------------X

PARTNERS VII/535 FOURTH OWNER LLC, 535 4TH
AVENUE DEVELOPER LLC, XYZ PROPERTIES INC.,
DYNATEC CONTRACTING INC.

               Third-Party Plaintiffs,

           -against-

QUALITY FACILITY SOLUTIONS CORP

               Third-Party Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 150987/2020 |
| MOTION DATE | 12/06/2023, 02/02/2024 |
| MOTION SEQ. NO. | 001 002 |

### DECISION + ORDER ON MOTION

Third-Party
Index No. 595070/2022

The following e-filed documents, listed by NYSCEF document number (Motion 001) 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 102, 103, 104, 105, 107, 109, 111, 113, 120, 121, 122, 123, 124, 125, 126, 127, 129, 131, 135, 136

were read on this motion to/for        JUDGMENT - SUMMARY        .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 106, 108, 110, 112, 114, 115, 116, 117, 118, 119, 128, 130, 132, 133, 134, 137

were read on this motion to/for        JUDGMENT - SUMMARY        .

     Plaintiff, a construction site superintendent, was employed by non-party Slate Property Group, a developer. Plaintiff sustained injuries on April 24, 2019, when he fell down a four-foot high temporary staircase on the construction site. In his complaint, he alleges causes of action under Labor Law sections 200, 240(1) and 241(6) against owners/developers/partners of the construction site at 535 4th Avenue in Brooklyn, NY, who are defendants Partners VII/535 Fourth Owner LLC,

**150987/2020  PILETTO, RICHARD vs. PARTNERS VII/535 FOURTH**
**Motion No.  001 002**

Page 1 of 8

1 of 8

535 4th Avenue Developer LLC, and XYZ Properties, Inc. (collectively, Partners), the general contractor (GC), Dynatec Contracting Inc.[1] (Dynatec or the GC), subcontractors Naf Pak Plumbing & Heating Corp (NafPak), and Quality Facility Solutions Corp (QFS) (NYSCEF # 115 – pltf's atty aff – ¶ 12).

In MS 001, the Partners/GC jointly move for summary judgment against Naf Pak and QFS on their contractual indemnification, breach of contract, common law indemnification and contribution claims. Naf Pak opposes the motion, and QFS cross moves for summary judgment dismissing all the crossclaims and third-party claims against it.

In MS 002, QFS moves for summary judgment to dismiss the claims and crossclaims as against it. Plaintiff opposes QFS's motion; the Owners and GC (together Owner/GC) jointly oppose QFS's motion for summary motion to dismiss all the claims and crossclaims as against.

As the liability issues are addressed in MS 002, QFS's motion, and MS 001 concerns indemnification issues, MS 002 will be addressed first.

## FACTS

Plaintiff was a site superintendent for non-party Slate Property Group (Slate), which was in a partnership with defendant Dynatec[2] (NYSCEF # 90 - pltfs depo tr at 15:16-22; 16:16-24). Plaintiff testified that he worked at the construction site at 535 4th Avenue (535 Site) as well as the adjacent construction site at 555 4th Avenue (555 Site) (*id.* at 23:19-23). His supervisor was Luke Flaherty, who had hired him for the job (*id.* at 25:11-13, 80:9-15). On the day of the accident, plaintiff was going to Slate's office at the 535 Site to make copies and to meet his friend for lunch (*id.* at 19:16-20). He fell as he went up the temporary staircase (*id.* at 95:14-16). He did not notice an unsafe condition or he would have reported it to the site superintendent at Slate (*id.* at 89:9-90:8). And except for Julani Benjamin, the friend he was meeting for lunch, no one was there when the accident happened (*id.* at 85:7-15).

Plaintiff had witnessed NafPak working with pipes on the jobsite before his accident. And "[w]henever he had previously observed a discarded pipe on the jobsite, he would tell the plumbers to clean up after themselves" (NYSCEF # 118 – Owners/GC's aff in opp - ¶ 21). The QFS laborers were directed to clean the jobsite, including the temporary wooden staircase, daily. And their "erroneous performance" caused plaintiff's injury (*id.* ¶ 34). The Owners/GC were unaware of who built the temporary staircase or of any complaints or violation about debris on the staircase

---

[1] Plaintiff testified that Slate and Dynatec were a partnership (NYSCEF # 90 - pltfs tr at 16:16-24).
[2] Prior to his accident, plaintiff received a letter of termination effective April 26, 2019, from SD Builders and Construction Co. (NYSCEF # 90 at 54:14-19).

**150987/2020  PILETTO, RICHARD vs. PARTNERS VII/535 FOURTH**
**Motion No. 001 002**

**Page 2 of 8**

[* 2]

(*id.* ¶ 25). But Owners/GC surmises that NafPak would be the entity using the type of pipe at issue for its plumbing and sprinklers work (id. ¶¶ 25-26). "At the direction of 'management', QFS would clean the staircases on the jobsite of construction debris (*id.* ¶ 27).

Julani Benjamin, a site safety coordinator at the time of plaintiff's accident, testified that usually each trade cleaned up after themselves by putting the debris in one area for the cleaners to pick up and dispose of (NYSCEF # 94 – Benjamin tr at 8-11, 22-23:5, 23:7-24:7). Plaintiff testified that in the week leading up to the day of his accident, NafPak was doing plumbing work at the 535 Site (pltf's tr at 77-78).

Joseph (Joe) Cappellini, a superintendent for SD Builders at the time of plaintiff's accident and currently SD's Site Safety Coordinator, does not recall seeing any pipes on the wooden staircase on the day of the accident (NYSCEF # 93 – Capellini tr at 7-8:11; 44:12-15). Cappellini testified that the work shuts down at lunchtime but not the site (*id.* at 50:12-15).

QFS's employee, Yidel Falkowitz, testified that QFS does office and commercial cleaning as well as provide unskilled laborers on demand from management. The laborers' tasks are directed by the managers (NYSCEF # 95 – QFS tr at 12, 18:22-20:12). It is usually the contractors who direct the unskilled laborers, and the job at 535 Site was no different; QFS has the same setup (*id.* at 38:18-39:5). As to the indemnity insurance, Falkowitz recognized the name "SD" as the developer or investor since QFS has dealt with them before (*id.* at 39:9-6).

Addressing the allegations against it, QFS argues that it is not a "covered entity" under Labor Law §§ 240(1) and 241(6) (MS2 - NYSCEF # 100 – QFS's MOL at 1). QFS makes clear that it worked at the site under Dynatec (the general contractor)'s direction. And characterizing itself as the "lowest man on the totem pole," it stresses that it has no authority, control over the work, or duty to enforce proper safety practices (QFS's MOL at 1). To stress this point, QFS cites *Woodruff v Islandwide Carpentry Contractors, Inc.*, which held that a subcontractor which was not the general contractor or the owner's agent is not liable under Labor Law §§ 240(1) and 241(6) (222 AD3d 920, 921 [2d Dept 2023]) (QFS's MOL at 3). QFS asserts, without reference to the contract provision, that its contract with the GC "expressly stated that the construction manager did not control the means and methods of work," and claims, also without reference, that the plaintiff himself testified that "his employer was responsible for the safety at the job site" (*id.* at 4).

QFS also points out that plaintiff is not a covered worker because his presence at the 535 Site was to meet a friend for lunch; plaintiff worked at the adjacent 555 Site (*id.* at 1). But even if plaintiff were a covered worker, QFS argues that plaintiff's injury does not invoke the protections under Labor Law § 240 since plaintiff's fall did not involve "a significant elevation related risk" (*id.*). Plaintiff

**150987/2020  PILETTO, RICHARD vs. PARTNERS VII/535 FOURTH**
Motion No.  001 002

Page 3 of 8

3 of 8

[* 3]

merely slipped on a pipe, which was incidental to the pipe work being done but did not fall to the ground. And the staircase, which was temporary, was not inadequate for its purpose (*id.*).

Plaintiff opposes QFS's motion (MS2 – NYSCEF # 117 - pltf's MOL). Citing to the contract between QFS and the GC (the QFS-GC contract), plaintiff argues that QFS is a statutory agent of either the owners or the GC (*id.* ¶¶ 5-9). Plaintiff points to the QFS-GC contract as evidence that the GC conferred "supervisory authority onto QFS for their scope of work inclusive of their duty to clean the 535 Site," pointing out the contract says "as an independent subcontractor of Contractor, [QFS] agrees to provide all labor, . . . supervision . . . work, services, paperwork, and insurance necessary to perform the Work described in this Agreement . . . ." (*id.* ¶ 8 quoting NYSCEF # 97 – contract at 3 § 1). Along with the "Site Management" and "Compliance with Laws" provisions in the QFS-GC contract, plaintiff concludes that QFS is a statutory agent of the GC or the owners and is a covered entity liable for plaintiff's injury (*id.* ¶ 9 citing *Walls v Turner Constr. Co.*, 4 NY3d 861 [2005]). Plaintiff concludes that QFS's failure to clear the wooden staircase of the metal pipe on the step is the cause of plaintiff's accident (*id.* ¶ 10).

Plaintiff adds that because he worked for the developer, non-party Slate, he is covered by the protections under Labor Law § 240(1) and § 241(6). To counter QFS's claim that plaintiff was not a covered person as he was merely on the premises to meet a friend for lunch, plaintiff asserts that he was there as a site superintendent for one of the owners of both the 535 and 555 Sites and he would go between the two sites. Plaintiff testified that he was intending to meet his friend at the 535 office for lunch, but he was also going to make copies of the timesheets at the 535 office at the time of his accident (pltf's tr at 184).

As for his claim under Labor Law § 200, plaintiff argues that QFS, as a statutory agent, responsible for housekeeping or clean up, has the burden of showing that the staircase was cleaned before plaintiff went on it (pltf's MOL ¶ 47).

Plaintiff posits that he has established that QFS is a covered entity and that plaintiff is a covered person, hence, plaintiff claims that QFS is liable for plaintiff's injury. And plaintiff claims QFS has not made a prima facie case that it lacked notice of the pipe on the staircase, hence QFS's motion should be denied (*id.* ¶ 49).

## DISCUSSION

*Labor Law § 240(1) and Labor Law § 241(6)*

QFS argues that it is not a covered entity for purposes of Labor Law § 240(1) and § 241(6). A subcontractor is an "agent" of an owner or general contractor when the subcontractor is given the authority to supervise and control the work being

150987/2020  PILETTO, RICHARD vs. PARTNERS VII/535 FOURTH
Motion No. 001 002

Page 4 of 8

4 of 8

[* 4]

performed at the time of the injury (*Brown v Two Exchange Plaza Partners,* 146 AD2d 129 [1st Dept 1989] *aff'd* 76 NY2cd 172 [1980]).

Plaintiff claims that QFS, under the QFS-GC contract, is a statutory agent. "An agency relationship for purposes of section 240(1) arises only when work is delegated to a third party who obtains the authority to supervise and control the job" (*Blake v Neighborhood Hous. Serv. of New York City, Inc.,* 1 NY3d 280, 293 [2003]). Here, reading plaintiff's chosen provision of section 1 of the contract together with the scope of plaintiff's work does not signal that QFS has supervisory responsibility of the GC itself. In fact, the QFS-GC contract provision for "Scope of Work" for QFS says that "[s]ubcontractor shall provide <u>non-skilled labor service staff for the Facility as Follows</u>: Clean Site per direction of site supervisor. Act as flagman and perform simple deliveries. Act as hoist operators as needed and perform other work within the scope of non-skilled labor," and that "[t]he rate of pay was $25.00 per hour" (QFS-GC contract at 1 [underline in original]). Nothing in the scope of the contract hints that QFS is acting as an agent for QFS.

Thus, as stated under the QFS-GC contract, QFS agreed to clean the site as directed by the site supervisor (*see* pltf's atty aff ¶¶ 20 quoting contract at 2). The site supervisor, as plaintiff identified, was Luke Flaherty (pltf tr at 18:14-17, 25:11-13). Plaintiff himself also supervised (*id.* at 25:14-20 ["(w)hatever trades that were there for that day, I would supervise it . . ."]).

Plaintiff relies on the *Walls v Turner Constr. Co.* case, but the defendant in *Walls* "had such supervisory control and authority over the work being done" – replacing a window – and "[the defendant's] broad responsibility was both that of coordinator and overall supervisor for all the work being performed on the job site . . . and under a contractual obligation to monitor [the] window replacement" (4 NY3d at 864-865). In contrast to the defendant in *Walls,* QFS was not the site supervisor nor did QFS controlled or supervised plaintiff, who was one of the owners/developer's superintendent and a site supervisor as he had testified. There is no allegation that QFS controlled or supervised the work site or directed the installation of the sprinkler system that required the subject temporary staircase.

Notably, plaintiff does not cite any contract provision that delegates the duty of owners and contractors to furnish or erect devices so as to give workers the proper protection against elevation-related injury that is imposed by Labor Law § 240(1). Nor did plaintiff state that QFS had authority to supervise and control the elevation-related job. There are also no allegations that the "nondelegable duties on owners, as required under Labor Law § 241(6) to 'provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor'" were delegated to QFS, who are not owners or have an interest in the property (*see Karwowski v 1407 Broadway Real Estate, LLC,* 160 AD3d 82, 85 [1st Dept 2018]).

**150987/2020   PILETTO, RICHARD vs. PARTNERS VII/535 FOURTH**
**Motion No. 001 002**

**Page 5 of 8**

The contractual provisions cited by plaintiff, such as compliance with laws, is too general to delegate these nondelegable duties to QFS. Finally, plaintiff's argument imputing authority and control to QFS is unpersuasive given QFS's function under the QFS-GC contract is to clean and provide unskilled laborers for cleaning. These cleaning jobs were to be done "as directed by the site supervisor" according to the QFS-GC contract and as testified by Cappellini, the Owners/Developers' superintendent. As such, plaintiff, as a site supervisor present in the 535 Site, had the authority to instruct QFS's unskilled laborers to clean the stairs.

Further, as plaintiff had testified, he did not see any defect (the pipe) before climbing the stairs. There is no indication that QFS had constructive notice of this defect. And even if there were, plaintiff testified that he would have reported it to Slate's site superintendent. Finally, plaintiff also testified that except for Benjamin, whom he was meeting for lunch, he did not see anyone when the accident occurred. That no one was around correlates with Cappellini's testimony that at lunchtime, all work at the Sites stops. There is no information as to whether this piece of pipe was noticed by anyone at the lunch break let alone QFS personnel.

In sum, there is no evidence that QFS was a statutory agent of the owners/developers or the GC, that it had authority and control of jobs that are handled by other subcontractors or plaintiff's job or actions. As such, QFS was not required to provide the safety devices under Labor Law § 240(1) or adequate protection to those workers under Labor Law § 241(6) (*see Rodriguez v Riverside Center Site 5 Owner, LLC*, 234 AD3d 623, 625 [1st Dept 2025]). Accordingly, QFS's motion for summary judgment dismissing plaintiff's Labor Law § 240(1) and § 241(6) claims as against it is granted.

Given this conclusion, the issue of whether plaintiff was a covered person under Labor Law § 240(1) when his purpose of going up the temporary steps then was to make copies inside an office and to meet a friend for lunch is academic as far as QFS is concerned. In any event, the answer is no, plaintiff was not engaged in any enumerated function covered by § 240(1) (*see Campisi v Epos Contracting Corp.* 299 AD2d 4, 5 [1st Dept 2002]). Nor was plaintiff, a superintendent, performing an act necessary to further or assist any of the enumerated function (*id.* at 6 [discussing and citing cases in which § 240(1) protections were afforded to an architect, a civil engineer, a consultant, a supervisor and steel inspector who fell while inspecting the construction work site]).

*Labor Law § 200*

As for plaintiff's claim under Labor Law § 200 and common law negligence, QFS asserts it had no notice of pipe debris on the temporary staircase. Plaintiff points out that there is no evidence such as log reports or inspection sheets or any testimony in the record to show when QFS cleaned the area. Plaintiff posits that

**150987/2020  PILETTO, RICHARD vs. PARTNERS VII/535 FOURTH**
**Motion No.  001 002**

Page 6 of 8

6 of 8

[* 6]

this lack of evidence is detrimental to QFS's motion for summary judgment (pltf's atty aff ¶ 9).

Labor Law § 200 codifies an owner's or general contractor's common law duty to maintain a safe construction site (*see Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). To prevail on a Labor Law § 200 claim, plaintiff must show, in this case, that QFS "supervised and controlled plaintiff's work or had actual or constructive knowledge of the alleged unsafe condition (*see Torkel v NYU Hosps. Ctr.*, 63 AD3d 587, 591 [1st Dept 2009]; *Burkoski v Structure Tone*, 40 AD3d 378, 380-381 [1st Dept 2007]). To have supervisory control, a contractor must have controlled "how the injury-producing work was performed" (*Hughes v Tishman Constr. Corp*, 40 AD3d 305 [1st Dept 2007]). To plaintiff's point that QFS has no evidence to show of lack of notice, it is not defendant's burden to prove lack of notice "where the plaintiff failed to claim the existence of notice of the condition" (*Frank v Time Equities*, 292 AD2d 186, 186 [1st Dept 2002]).

QFS provides unskilled laborers to clean under the supervisor's direction, as stated in the QFS-GC contract. QFS unskilled laborers functioned as directed by the Owners/GC's supervisor. Certainly, there is no serious argument that QFS's unskilled laborers controlled the developer's superintendent's work or the plumbing subcontractor's work (*see Ruisech v Structure Tone, Inc.*, 208 AD3d 412, 414-415 [1st Dept 2022]). Finally, there is no indication that QFS had or should have had notice of the piece of pipe on the staircase around lunchtime when all work stops and no one was around (*see Ladignon v Lower Manhattan Dev. Corp.*, 128 AD3d 534, 535 [1st Dept 2015] [dismissing claims against cleaning subcontractor absent any indication of any constructive notice of the defect). Plaintiff's Labor Law § 200 is dismissed as against QFS.

*Indemnification/Contribution Claims*

Pertinent to the Owners/GC's motion is their contractual indemnity and common law indemnity claims and contribution against QFS (NYSCEF # 118 – Owners/GC's aff in opp). The QFS-GC contract included an "indemnification provision requiring [QFS] to hold the Owner/GC harmless when a claim arises out of or are connected with or are claimed to arise out of or be connected from the performance of its work on the jobsite" (*id.* ¶ 36).

As the finding on liability is in QFS's favor, and summary judgment is granted dismissing plaintiff's claims against QFS, so must the Owner/GC's claims for indemnification and contribution against QFS. As such, the Owner/GC's claim for contractual and common law indemnification and contribution cross-claim for indemnity and contribution is denied.

**150987/2020   PILETTO, RICHARD vs. PARTNERS VII/535 FOURTH**                    **Page 7 of 8**
**Motion No. 001 002**

7 of 8

*MS 001 – Indemnification and Contribution*

The Owners/GC's claims for indemnification and contribution from QFS must be denied given the findings on liability addressed above. Consequently, QFS's crossclaim dismissing the Owners/GC's as against QFC is granted given the findings and decision in MS 002.

As for the Owners/GC claims for the same against NafPak, the motion is premature (see NYSCEF # 103, NafPak's opps ¶ 17). There is no motion or decision as to NafPak's liability. To the extent that Owners/GC argue liability issues against NafPak, the arguments are made in its reply, hence they are not considered. The arguments made in its affirmation in support claim either QFS or NafPak are liable (MS 001 – NYSCEF # 68, Owners/GC's aff in support). This court declines to venture a guess on this issue absent any evidence and based on conclusory arguments. As such, MS 001 is dismissed as premature without prejudice as against NafPak.

Accordingly, it is

ORDERED that third-party plaintiffs Partners VII/535 Fourth Owner LLC, 535 4th Avenue Developer LLC, and XYZ Properties, Inc. and Dynatec Contracting Inc.'s (collectively, Owners/GC) motion (MS 001) is dismissed without prejudice as against Naf Pak Plumbing & Heating Corp (NafPak); and it is further

ORDERED that the Owners/GC's motion (MS 001) as against third-party defendant Quality Facility Solutions Corp is denied; consequently, Quality Facility Solutions Corp's cross motion is in MS 001 is granted; and it is further

ORDERED that defendant/third-party defendant Quality Facility Solutions Corp. shall serve this Decision and Order with Notice of Entry on all parties and the Clerk of the Court within 10 days of the filing of this order; and it is further

ORDERED that the non-dismissed parties shall proceed to Part 40 for trial.

| 6/01/2025 | | | |
|---|---|---|---|
| **DATE** | | **MARGARET A. CHAN, J.S.C.** | |

| CHECK ONE: | | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**150987/2020  PILETTO, RICHARD vs. PARTNERS VII/535 FOURTH**
**Motion No.  001 002**

**Page 8 of 8**